(No. 18222.—

ABRAHAM L. NICOL, Trustee, *vs.* CORA B. MORTON *et al.* Appellees.—(GILES L. WRIGHT *et al.* Appellants.)

*Opinion filed October 25, 1928—Rehearing denied Dec. 18, 1928.*

Dunn, J., dissenting.

Adlai H. Rust, for appellants.

WILLIAM R. BACH, for appellees.

Mr. COMMISSIONER PARTLOW reported this opinion:

Abraham L. Nicol, as trustee under the last will and testament of Osborn Barnard, filed his bill in the circuit court of McLean county to construe the will and a codicil executed by the testator. Upon issue being joined there was a hearing, a decree was entered construing the will and codicil, and from that decree an appeal has been prosecuted to this court by Giles L. Wright and Gladys H. Jones.

Osborn Barnard died testate June 23, 1901, leaving his widow, Sarah Barnard, and his daughter, Cora B. Wright, as his only heirs-at-law. Cora was married to Maurice Wright and two children were born of that marriage, appellants, Giles L. Wright and Gladys H. Jones, formerly Gladys H. Wright. The will and codicil were admitted to probate in McLean county on July 22, 1901. The executor and trustee qualified and acted until his death, in March, 1916, whereupon Abraham L. Nicol was appointed as successor by the circuit court of McLean county. After the death of the testator, Cora B. Wright was divorced from her husband and later she married Charles E. Morton. Eight children were born of this last marriage. One died in infancy and seven were defendants to the bill, five of whom were minors. Three children were born to Gladys H. Jones and two were born to Giles L. Wright, all of whom were parties defendant and were minors. The widow of the testator died testate November 4, 1913. The testator owned a residence in the city of Bloomington, and farm lands in McLean county, Illinois, and in Iowa.

The will was dated April 10, 1899, and provided (1) that the funeral expenses and debts be paid; (2) upon the death of the testator the entire estate was to vest in the trustee for the use of the beneficiaries therein designated; (3) the trustee was to pay to an adopted son $2000, less

the amount paid prior and subsequent to the date of the will; (4) the trustee was not to exact from the widow any rent for the residence but she was to occupy it as long as she lived and after her death the daughter was to occupy it, rent free, as long as she desired; (5) the trustee was to sell two tenant properties in Bloomington; (6) the trustee was to keep all real estate in good repair, the farm lands in a good state of cultivation, and invest all funds in safe real estate securities; (7) the household goods and personal property in the home were to go to the widow; (8) the trustee was to pay to the widow for life the net income from the estate, and if this income was insufficient to provide her with a comfortable support, he was to pay her such part of the personal estate as might be ordered by the county court of McLean county; (9) after the death of the widow the trustee was to pay to the daughter, for life, the net income; (10) after the death of both the widow and daughter the trustee was to pay the net income to the children of the daughter, share and share alike, and if any child had died leaving children they were to receive their parents' share; (11) after the death of both the widow and the daughter, and after the youngest child of the daughter then living had arrived at twenty-one years of age, the title to all of the estate, both real and personal, was to vest absolutely in the children of the daughter, share and share alike, and if any child had died leaving children they were to inherit their parents' share; (12) after the death of the widow and the daughter, if the daughter left no children living and there were no children dead leaving children, the trustee was to turn over the remainder of the estate, real and personal, to some well conducted public hospital for the sick, solely owned and conducted by a Protestant Christian association located in or near the city of Bloomington; (13) the trustee was to give bond, make reports to the county court, and provision was made for the appointment of his successor, the clause ending as follows: "But I di-

rect that Maurice Wright shall not be appointed as such trustee, the said Maurice Wright being my son-in-law."

On June 19, 1901, a codicil of three paragraphs was executed. The first paragraph provided that the bequest to the adopted son in the third paragraph of the original will should not be paid until after all debts had been paid. The second paragraph was as follows: "I hereby modify the eleventh section of my said will as follows: At the expiration of twenty-five years from the time of my death, (provided my wife, Sarah Barnard, is not living and as soon thereafter as she shall become deceased,) I direct my said trustee to sell all of my real estate at either public or private sale and make deed or deeds conveying to the purchaser or purchasers the same title that I might convey, and the proceeds derived from the sale of said real estate, together with the personal property then in the hands of said trustee, shall be divided into four equal parts, one of which parts shall be paid to my grand-daughter Gladys H. Wright, to have and to hold by her absolutely, and one of which parts shall be paid to my grandson Giles L. Wright, to have and to hold by him absolutely, and if my daughter Cora B. Wright, be then living, said trustee shall retain the other two parts and loan the same upon good real estate security and the net income received shall be paid by said trustee to my said daughter, Cora B. Wright, and upon the death of my said daughter, Cora B. Wright, after the sale of the real estate aforesaid, then that part of the proceeds of said sale of real estate and of the personal property directed to be loaned for her use and benefit, shall be paid to my said grandchildren, Gladys H. Wright and Giles L. Wright, in equal parts, share and share alike, to be held by them absolutely, and if either of said grandchildren should die without issue, before the time arrives for the distribution of the estate herein designated, then the survivor shall take the other's share, to have and to hold absolutely." The third paragraph authorized the trustee

to borrow money on the Illinois farm to pay for the land in Iowa.

The questions presented by the bill were: (1) Did the second paragraph of the codicil violate the rule against perpetuities? (2) If that provision of the codicil was valid, did it affect the provision of the fourth paragraph of the will giving to the daughter, after the death of her mother, the right to occupy the homestead, rent free, as long as she desired to occupy it as a home? (3) Did it affect the provision of the ninth paragraph of the will that the daughter, after the death of her mother, should have the net income for life?

The decree found that the second paragraph of the codicil, and the interests therein sought to be created, were in violation of the rule against perpetuities in so far as they related to the personal property in the hands of the trustee and to the real estate in Illinois; that the trust created by the original will remained in full force and effect, and that the daughter, after the death of her mother, was entitled to the net income during life; that at the death of the daughter, until the youngest child of the daughter then living attained the age of twenty-one years, the trustee was to pay the net income, in equal parts, to all of the children of the daughter, and if any child was dead leaving children they were entitled to their parents' share; that after the death of the daughter, when her youngest child then living attained the age of twenty-one years, the title to all of the property held in trust was to vest in all of the children of the daughter then living, share and share alike, and if any child was dead at that time leaving a child or children, it or they were to inherit its or their parents' share. The decree allowed a solicitor's fee to appellees' solicitor and to the guardian *ad litem* for the minors but denied the motion of appellants for the allowance of a fee to their solicitors.

Appellants contend that at the death of the testator, under the second clause of the codicil, they took a vested in-

terest in the fund, and that their interests were not in violation of the rule against perpetuities; that on June 23, 1926, which was the end of the twenty-five year period, it became the duty of the trustee to sell the real estate, pay one-fourth to each of appellants, and hold one-half in trust as provided in the codicil; that appellants should have been allowed a reasonable solicitor's fee. Appellees contend that under the second paragraph of the codicil the estate did not vest until twenty-five years after the testator's death and violated the rule against perpetuities; that appellants did not take under the second clause of the codicil but did take under the eleventh clause of the will, together with all of their half-brothers and sisters who were the children of Cora B. Wright by her second marriage.

The primary question is whether the remainder to appellants was vested or contingent. If it was vested it was not in violation of the rule against perpetuities even though the trust extended for a period greater than the length of time covered by the rule. (*Carlberg* v. *State Savings Bank,* 312 Ill. 181; *Howe* v. *Hodge,* 152 id. 252; *Lunt* v. *Lunt,* 108 id. 307.) If it was contingent, then the rule against perpetuities was violated and the gift was void.

The rule against perpetuities has reference to the time within which the title vests and has nothing to do with the postponement of the enjoyment or the duration of the title. An interest which vests within lives in being and twenty-one years thereafter is not within the rule although it may continue beyond the prescribed period. (*Armstrong* v. *Barber,* 239 Ill. 389; *Mettler* v. *Warner,* 243 id. 600; *Johnson* v. *Preston,* 226 id. 447; *Flanner* v. *Fellows,* 206 id. 136.) The rule is concerned only with the beginning of the interest. It settles the time within which interests must vest. (*O'Hare* v. *Johnston,* 273 Ill. 458.) A remainder is vested when it is limited to determinate persons, to take effect in possession immediately upon the termination of the particular estate. (*Jones* v. *Miller,* 283 Ill. 348; *Pingrey* v. *Ru-*

*lon,* 246 id. 109.) A remainder is contingent when it is limited to take effect upon a dubious or uncertain event or to a dubious or uncertain person. (*Brownback* v. *Keister,* 220 Ill. 544.) The main distinction between a vested and a contingent remainder is its present capacity to take effect in possession in a determinate person immediately upon the termination of the particular estate. In a vested remainder there is a person in being, ascertained and ready to take, with a present right of future enjoyment, while in a contingent remainder there is either no ascertained person in being ready to take immediately upon the termination of the particular estate, or it is uncertain whether the event upon which the estate is to vest will ever happen. It is the uncertainty of the right to take the property, and not the enjoyment of it, that distinguishes a contingent from a vested remainder. (*Smith* v. *Chester,* 272 Ill. 428; *Chapin* v. *Crow,* 147 id. 219.) Neither the fact that the enjoyment of the remainder is postponed to let in an estate for life nor that a condition subsequent exists upon the happening of which the estate will be divested will operate to make the remainder contingent. (*Carter* v. *Carter,* 234 Ill. 507; *People* v. *Allen,* 313 id. 156; *Calvert* v. *Calvert,* 297 id. 22.) If the conditional element is incorporated into the description of or into the gift to the remainderman then the remainder is contingent, but if, after words giving a vested interest, a clause is added divesting it under certain conditions, the remainder is vested. (*Corson* v. *Thornburn,* 323 Ill. 338; *Lachenmyer* v. *Gehlbach,* 266 id. 11.) If there is a possibility that a gift or devise violates the rule against perpetuities the gift or devise will be held to be void. (*Bigelow* v. *Cady,* 171 Ill. 229.) The rule is absolute, and the mere improbability of its occurrence after the prohibited time is immaterial. *Johnson* v. *Preston, supra.*

A bequest of personal property, though made wholly by direction to distribute at the termination of a prior estate,

will vest at once, the right of enjoyment only being postponed, where the distribution is not postponed for reasons personal to the legatee but merely to let in prior estates. (*Carter* v. *Carter, supra; Pearson* v. *Hanson,* 230 Ill. 610; *Dee* v. *Dee,* 212 id. 338; *Scofield* v. *Olcott,* 120 id. 362.) In *Easton* v. *Hall,* 323 Ill. 397, on page 417, this court said: "The rule is that a bequest contained only in a direction to divide or pay at a future time or upon the happening of a future event does not vest until the time of payment arrives. This rule, however, is subject to an exception that where the division, transfer or payment is postponed, not for any reason personal to the legatee but for the convenience of the estate, as, to enable the application of the property to the use of a prior taker, the gift will be regarded as vesting at the time the will takes effect, the right of enjoyment only being deferred." In *Metsker* v. *Metsker,* 320 Ill. 547, it was held that the direction by a testator to sell real estate and distribute the proceeds constituted a legacy of money and not a devise of land.

The second paragraph of the codicil provided that at the expiration of twenty-five years from the testator's death the trustee should sell the property and distribute the fund. This was, therefore, a legacy of money and not a devise of land. In determining whether the interests of appellants were vested it is necessary first to determine whether the payments were postponed for reasons personal to the legatees, or whether they were postponed for the convenience of the estate so that the property might be applied to the use of prior takers. The intention of the testator in this regard must be determined from all of the provisions of the will and codicil.

By the second paragraph of the will the entire estate went to the trustee. By the eighth paragraph the trustee was directed to pay the net income to the widow during life. By the ninth paragraph the daughter was given the net income during life after the death of her mother. By

the tenth and eleventh paragraphs disposition was made of the income and *corpus* after the expiration of the life estates. The second paragraph of the codicil provided that at the expiration of twenty-five years after the death of the testator, provided the widow is not living, or immediately after her death, the trustee shall sell the land, divide the proceeds into four equal parts and make disposition of each part. It was the apparent intention of the testator that the second paragraph of the codicil should entirely supersede the eleventh paragraph of the will and that the remainder of the estate should be distributed as provided in the second paragraph of the codicil. It is also apparent when the will and codicil are considered together as a whole, that it was the intention of the testator to make complete and ample provision, as far as his estate would go, first for his widow, next for his daughter and then for his two specified grandchildren. The final payment was postponed for twenty-five years, not for any reason personal to the legatees but for the convenience of the estate, so that it might be applied to the use of the widow and daughter before it finally went into the possession of appellants.

Appellees insist that the reason for the postponement was personal to the legatees because the testator by the last paragraph of the will provided that Maurice Wright, his son-in-law, should not be appointed trustee; that the testator was not friendly with Wright and did not want him to have anything to do with the estate or have any interest in it, therefore for this reason he postponed final payment for twenty-five years. There is no merit in this contention when all of the facts are considered. The provision as to Wright was a minor consideration of the testator. His primary object was to make provision in succession for the various members of his family, beginning with the wife and ending with appellants.

The gifts to appellants were by name and not to a class. They were specifically named as remaindermen. Every lim-

itation or gift under the codicil was to some specific person in being when the will and codicil were made and at the time of the death of the testator. If one of the appellants died before the time for distribution the survivor took all of the estate. There was no limitation over even to the heirs of the one not surviving. Under the codicil there was nothing appellants were to do other than to take at the termination of the prior estates. The will did not require that they be in existence at the time of distribution or that they should attain a certain age or meet any qualification of any nature whatever. There was a grant of the *corpus* of the estate to the trustee during the interim between the death of the testator and the time for distribution to appellants. There were prior interests created in the *corpus* during that interim. If the gifts to appellants had been at the death of the widow and there had been no reference to a period of twenty-five years there could be no question but that the interest of appellants would be vested. (*Mc-Comb* v. *Morford,* 283 Ill. 584; *Lynn* v. *Worthington,* 266 id. 414.) In *Pearson* v. *Hanson, supra,* the prior interest was at the termination of ten years, with a provision for sale and distribution at the end of the term, and it was held that the right to the sale money vested at the death of the testator, citing *Scofield* v. *Olcott, supra.* Where the devise is for life with a remainder to specifically named children, with a subsequent provision that if any such named children die before the termination of the life estate then the property is to be divided equally among the survivors, the devise of the remainder is to certain definite, specific and named individuals, who as remaindermen already answer to the description by which they are to take, and there is no obstacle to supposing an immediate vesting has been intended. (*Ducker* v. *Burnham,* 146 Ill. 9; *Northern Trust Co.* v. *Wheaton,* 249 id. 606.) In *Lynn* v. *Worthington, supra,* the will provided that "after the death of my daughter I give the said land in equal undivided parts to my chil-

dren and their heirs in fee simple forever," and it was there held that the expression "after death" referred to the time of enjoyment and not to the vesting of the estate. The provision that after the sale of the property the daughter, if living, was to receive one-half of the income for life did not import contingency. A life estate to a person *in esse* at the testator's death is not too remote. (Gray on Perpetuities, sec. 331.)

Appellees rely strongly upon *Reid* v. *Voorhees,* 216 Ill. 236, to uphold their argument that the gift to appellants was contingent. The provisions of the will in that case are entirely different from the provisions in this case. In the *Reid case* the third clause of the will bequeathed to six nieces and nephews, by name, rent from the real estate, to be collected by the executor and paid to them equally, and annually, for thirty years. The fifth clause provided that "thirty years after my death, I give and bequeath to my above named nephews and nieces, or their heirs, and if no heirs to be divided equally among the surviving heirs, all of my above described real estate," the same to be sold and the proceeds divided. The conclusion reached in that case was based largely upon the wording of the fifth clause, where there was no grant of the *corpus* of the estate for thirty years after the testator's death. That case is not controlling here.

The remainders to appellants in this case were vested, they did not violate the rule against perpetuities, and the decree will be reversed and the cause remanded, with directions to enter a decree in accordance with the views herein expressed, allowing to appellants a reasonable solicitor's fee.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Reversed and remanded, with directions.*

Mr. JUSTICE DUNN, dissenting.