(No. 28210.——

Nathaniel, S. Corwin *et al.*, Appellees, *vs.* Marie L. Rheims, Appellant.——(International Hotel Company, *et al.*, Cross Appellants.)

*Opinion filed March 21, 1945—Rehearing denied May 21, 1945.*

206

SCOTT, MACLEISH & FALK, (LELAND K. NEEVES, of counsel,) both of Chicago, for appellant.

FINK & MEIER, and MAYER, MEYER, AUSTRIAN & PLATT, (SHERWOOD K. PLATT, of counsel,) all of Chicago, for appellees.

ORR, VAIL, LEWIS & ORR, and GUSTAV E. BEERLY, (WARREN H. ORR, of counsel,) all of Chicago, for cross appellants.

Mr. JUSTICE MURPHY delivered the opinion of the court:

The appeal in this case is prosecuted to reverse a decree of the superior court of Cook county which decreed the title to lots 10 and 11, block 115 in School Section addition to the city of Chicago to be vested, a two-eighths in appellant, Marie L. Rheims, and the remaining three-fourths in appellees Gertrude Libbey, Maida Backus, Mildred Loring Wilson and Anna Louise Clapp, all interests subject to a 99-year lease. Appellant contended that by the terms of two trust instruments hereinafter referred to she was the sole owner, while appellees contended that the will of Maude Hanley Branca vested the title in the beneficiaries named. A cross appeal is prosecuted by the parties and their privies who by assignment have succeeded to the interest of the original lessee in the 99-year lease. They seek to reverse that part of the decree and orders which denied them relief from a rental operating agreement which was to supplement the rental terms contained in the 99-year lease.

Facts pertinent to the title issue are as follows. On and prior to November 2, 1885, Mary E. Hanley, a widow, owned the fee-simple title to said lots. On said date, she executed a lease demising said lots to Frederick E. Eames for a period extending from November 2, 1885, to November 2, 1984. The rental for the first ten years

was fixed at $9,000 per annum and for the remainder of the 99-year period at $12,000 per year. As an additional consideration, lessee was to pay the taxes.

On November 14, 1893, Mary E. Hanley conveyed said lots, subject to the lease, to Daniel A. Loring, Sr., in trust. This deed of trust will be referred to as trust instrument No. 1. The granting words were in the form of a common-law warranty deed and purported to convey the title to the lots, subject to the lease, to Daniel A. Loring, Sr., in trust for the use of Maude Hanley, Dora Blodgett and William A. Hanley, children of settlor. The trustee was empowered to collect the rents and income from said property, deduct necessary expenses, and distribute the balance in equal shares to the three children. It provided that if any child should die leaving lawful issue, the share of such deceased child should go to such lawful issue in equal shares and if any child should die without leaving lawful issue, then such share should go to the surviving children of the settlor. The trustee was given power to sell the lots subject to the 99-year lease, the proceeds of such sale to become the *corpus* of the trust fund, subject to the same terms as were provided in reference to the income from the lots. Four persons were named as successor trustees in the event of the death of trustee Daniel A. Loring, Sr. The powers conferred on the successor trustees were limited to the collection and distribution of the rents. It expressly provided that they should not sell, mortgage, or in any way encumber the property during the continuance of the lease. It contained restrictive provisions preventing any child from assigning or encumbering his interest in the income "during the term of the aforesaid lease." It provided that "In the event of the death of all three of said beneficiaries, then the income of said property is to be divided equally among the legal heirs of said beneficiaries by said trustee or his successor."

Mary E. Hanley died in 1909 intestate, leaving the above-named children as her sole heirs-at-law. In January, 1917, the three children executed another trust deed which will be referred to herein as trust instrument No. 2. By way of recital it referred to trust instrument No. 1, the death of Mary E. Hanley, the persons who were her heirs-at-law, and stated that, whereas trust instrument No. 1 "failed to provide for the disposition of the property thereby conveyed in case of and upon the death of said beneficiaries * * * except that said instrument attempted to provide for the division of the income of said property, in the event of the death of all said beneficiaries, among their legal heirs; and Whereas, * * * . [the parties to this instrument] desire to vest in said Daniel A. Loring, Sr., as trustee the legal title to said property on the terms herein stated; * * *." The instrument conveyed the lots to Daniel A. Loring, Sr., subject to the 99-year lease in trust. The trustee was empowered to collect the rents and income from the property and to make distribution. The distribution of the income was to the same persons, each receiving the same interest with the same limitations as were provided in trust instrument No. 1, except that in the event any one of the three children should die leaving lawful issue, such share was to go to such lawful issue *per stirpes,* rather than in equal shares as was provided in trust instrument No. 1. The power of Daniel A. Loring, Sr., to sell was renewed in trust instrument No. 2. It named successor trustees and limited their power to the collection and distribution of rents, the same as the former trust instrument. It concluded with the following pertinent provision: "In the event of the death of all of said beneficiaries the trust hereby created shall cease and terminate, and said property shall be and become the property of the legal heirs of the said Maude Hanley Branca, Dora Blodgett and William A. Hanley in equal shares *per stirpes* and not

per capita, provided said Daniel A. Loring, Sr., shall not then be living, but in case, however, the said Daniel A. Loring, Sr., shall survive the said Maude Hanley Branca, Dora Blodgett and William A. Hanley, then and in that event, upon the death of the said Maude Hanley Branca, Dora Blodgett and William A. Hanley, the trusts created by this instrument shall thereupon cease and determine, and the fee simple absolute of said premises shall be vested in and become the property of the said Daniel A. Loring, Sr., free from all charges and obligations arising by virtue hereof." The trustee Daniel A. Loring, Sr., died in 1922 without having exercised the power of sale contained in either of the trust instruments. He did not survive Maude Hanley Branca, or Dora Blodgett, therefore, the contingency upon which he might have become the owner of the fee subject to the 99-year lease did not occur.

William A. Hanley died intestate in 1919, leaving Maude Hanley Branca and Dora Blodgett, his sisters, as his only heirs-at-law. Dora Blodgett died intestate in 1922, a few days subsequent to the death of Daniel A. Loring, Sr. Her only heir-at-law was her sister Maude Hanley Branca. Maud Hanley Branca died testate in August, 1942. She left no husband or descendants. Her only heir-at-law was Marie L. Rheims, the appellant herein. Maude Hanley Branca left a will which was admitted to probate after this suit was started. The will devised said lots as follows: An undivided one-fourth to appellant Marie L. Rheims, and the other undivided three-fourths to appellees. Some of appellees were related to testatrix, but none of them stood in a relationship which constituted them her heirs-at-law.

By mesne assignments, the 99-year lease was assigned to the Artenia Hotel Company in May, 1932, and on March 18, 1942, it assigned the lease to the International Hotel Company. The present holder of the lease and its predecessors in title have used the building on said lot

for hotel purposes, which for the past thirty-five years or more has been operated under the name of the Atlantic Hotel. A part of the building used in connection with said business is located on other lots, the title of which is not involved on this appeal.

August 21, 1942, the successor trustees, under trust instruments No. 1 and No. 2, and others instituted this suit, designated as an action to obtain instructions. It set forth the execution of both the aforesaid trust instruments and the terms of the will of Maude Hanley Branca. It contained allegations of fact as to the date of the death of the several beneficiaries named in the trust instruments and their respective heirs-at-law. It was alleged that there was doubt and uncertainty as to the ownership of the lots and as to whom the rents should be paid. It was alleged that when the Artenia Hotel Company became the holder of the leasehold interest, there had been defaults in the payment of the annual rentals and the taxes levied against the lots, and that the trustees had made various concessions with the Artenia Company in reference to such defaults. It was alleged that on September 30, 1941, the defaults totaled $16,550, and that on June 16, 1942, an agreement was reached between the trustees and the holders of the lease relative to the payment of such rental deficiencies. The new agreement was to extend to December 31, 1951. Section 1, part V of the agreement stated that there was a doubt as to the authority of the trustees to enter into the agreement and that although the trustees had signed the instrument it was agreed that it should not become binding until confirmed by court decree.

The trustees prayed (a) for an order approving the contract of June 16, 1942; (b) that the terms and provisions of trust instruments numbered 1 and 2 be construed, and that directions be given the trustees in reference to their duties. They also asked for directions in reference to the payment of the rentals collected pursuant

to the agreement of June 16, 1942. Parties to the action included all those interested in the fee subject to the leasehold interest; the Artenia Hotel Company and its successor in title, the International Hotel Company; trustees holding a certain chattel mortgage lien on the personal property of the hotel company, which had been given to secure creditors other than those interested in the rents; and trustees holding title to the hotel company's leasehold interest to secure the payment of the company's bonds.

By appropriate cross complaint and answers, an issue was formed between appellant and appellees as to the title of the fee subject to the 99-year lease. The decree appealed from vests the title subject to the lease in the beneficiaries named in the will of Maude Hanley Branca, that is, an undivided two-eighths to appellant, and six eighths to appellees in the following proportions: two eighths to Gertrude Libbey, two eighths to Maida Backus and a one-eighth each to Mildred Loring Wilson and Anna Louise Clapp.

A motion made by appellees to dismiss the appeal was taken with the case. Further facts pertaining to the agreement of June 16, 1942, and the issues raised on the cross appeal will be stated later. The grounds of the motion are that the appeal was not taken in apt time. Its consideration requires a statement of the following facts. The decree from which appellant appealed was entered February 2, 1944. On February 8 thereafter, plaintiffs, trustees under trust instruments No. 1 and No. 2, moved to vacate the decree. The order entered recited that all parties were present in open court and represented by their respective counsel and ordered that the motion be entered of record and a hearing thereon be "continued generally." On February 28, plaintiffs supplemented the motion of February 8 by filing a written motion to vacate and set aside the decree of February 2. An order similar to the one of February 8 was entered. Plaintiffs' motion to vacate the

decree was overruled on May 19. Three days thereafter appellant filed her notice of appeal.

Appellees contend that plaintiffs-trustees' motion to vacate the decree of February 2 did not stay the running of the ninety-day period within which a notice of appeal should be filed and that, since appellant did not file her notice of appeal within the ninety-day period next following the entering of the decree as provided in section 76 of the Civil Practice Act, her appeal should be dismissed.

In support of their motion to dismiss the appeal, appellees rely upon what was said in *Diebler* v. *Bernard Bros. Inc.* 385 Ill. 610. When statements contained in a former opinion of this court are cited as a precedent, they must be considered in the light of the issues determined in connection with which the statement was made. The question decided in the *Diebler case* was not the same as the one presented by appellees' motion. In the former case a judgment which had been rendered by default was set aside. The order vacating the judgment was entered September 24, 1942. On October 9, the plaintiff in the judgment action moved to vacate the order of September 24. While such motion was pending undisposed of, plaintiff, on October 13, filed a notice of appeal from the order of September 24 setting the judgment aside. The question there was as to whether the order of September 24 was final and appealable. It was held that the order was final and appealable, and properly so, for in *Marks* v. *Pope,* 370 Ill. 597, it was held that where a party having an appealable interest in a judgment or decree, files a motion to vacate or set it aside and before the motion is disposed of files a notice of appeal, the filing of the notice of appeal will be taken as an abandonment of the motion. It is obvious appellees' motion in this case presents an entirely different question and what was said in the *Diebler case* is not a precedent here.

Prior to the adoption of the Civil Practice Act, when there were terms of court, the rule was that any judgment or decree entered of record remained in the breast of the court for the remainder of the term in which it was entered and that during such period it could be set aside on the court's own motion or for good cause shown, as justice and right might require. *Grubb* v. *Milan,* 249 Ill. 456; *Krieger* v. *Krieger,* 221 Ill. 479; *Donaldson* v. *Copeland,* 201 Ill. 540.

Subparagraph (7) of section 50 of the Civil Practice Act provides that the court, anytime within thirty days after entry of any judgment or decree, may set the same aside for good cause shown. In *Toman* v. *Park Castles Apartment Building Corp.* 375 Ill. 293, it was said that the Civil Practice Act substitutes a period of thirty days for a term of court under the prior law.

The Municipal Court Act makes no provision for terms of court but the act gives that court the same power to vacate judgments within thirty days after their rendition that circuit courts had to vacate judgments at the same term at which they were rendered. In *Hosking* v. *Southern Pacific Co.* 243 Ill. 320, the question was as to what effect, if any, a motion to set aside a judgment, made within the thirty-day period but not disposed of until after thirty days from the date of the judgment, had in fixing the time when the judgment became final and the time began to run for suing out a writ of error. After a review of many cases it was held that the filing of the motion within the thirty-day period stayed the running of the time limited for suing out a writ of error and that it did not start until the motion was disposed of. In *Lenhart* v. *Miller,* 375 Ill. 346, a motion to dismiss the appeal on the ground the decree was not final was denied. In passing on the motion it was said: "The rule is that the filing of a motion to vacate or set aside by a party to the cause stays the judgment or decree, and it does not become final

so as to start the running of the time limited for suing out a writ of error or perfecting an appeal until the motion has been disposed of, [citation] and it stays final judgment so that the court can act on the motion at a subsequent term or after thirty days from the entry of the decree."

The following principles are deducible from the cases. (1) If a party who has an appealable interest in a judgment or decree files a motion to vacate such judgment or decree, he may thereafter abandon the motion by withdrawing it or if he files a notice of appeal, such filing will constitute an abandonment of the motion. In either event the judgment or decree becomes final on the date it was entered and the time within which a notice of appeal must be filed begins to run from that date. (2) If a party in interest in any judgment or decree which is final and appealable files a motion to vacate or set aside the same, the motion stays the running of the time within which the notice of appeal must be filed, and if the motion is disposed of on its merits during the thirty-day period or thereafter, the time for filing of a notice of appeal begins to run from the date such motion is disposed of. Appellees' motion to dismiss the appeal is therefore denied.

The errors urged by cross appellants on their cross appeal refer to the order of the court denying them leave to file an answer after the court had announced his decision, but before the decree of February 2 was entered, to orders denying them leave to file answers after the entry of such decree, and to the decree itself. The questions raised by the cross appeal would not give this court jurisdiction by direct appeal if they were the only issues presented but they are so interwoven and related to the freehold question involved in the main appeal that decision of the questions on the cross appeal is in a measure dependent upon the conclusions reached in the main appeal. This court has jurisdiction of both appeals.

Mary E. Hanley did not dispose of the *corpus* of the trust by trust instrument No. 1. By such instrument she purportedly conveyed the fee-simple title subject to the lease to Daniel A. Loring, Sr., or his successors in trust. It is well settled that a conveyance to a trustee does not transfer to such trustee any more of the title than is necessary for the proper execution of the trust. The original trustee in this case was vested with power to do two things, namely: to collect the rents and make distribution, and to exercise a discretionary power of sale. The latter power was withheld from the successors in trust. It is conceivable that it would be necessary for a trustee to have a different title, if he was to exercise the power of sale than if his duties were limited to the collection of rents which were to accrue on a lease that had been previously executed by the settlor. The power of sale was never exercised, so that for purposes here it is sufficient to note that the trust instrument created a trust to collect the rents and in so doing the legal and equitable estates were separated. As will be noted from the conclusions reached on the disposition of the equitable estate, it is not necessary to determine whether the legal title in fee simple was conveyed to the trustee subject to the lease, or remained in settlor.

Since the first trust instrument did not dispose of the *corpus* of the property, appellant's claim to title to the lots under such instrument rests solely in the disposition that was made of the income therefrom and our further consideration will be limited to the equitable estates created in the income. Such income was, in the first instance, to be paid to settlor's three children. The gifts over to the lawful issue of any child dying leaving lawful issue, or, in the event of the failure to leave lawful issue, to the survivors, limited the estates of each of the children to a life estate.

Appellant's claim rests in the further provision which directed that on the event of the death of the survivor of settlor's three children, the income should be payable to the "legal heirs" of such children in equal shares. Appellant recognizes that the language of the trust instrument refers solely to the income, but she invokes the principle that a gift of the income of real estate is a gift of the property itself. Such principle has been recognized in many cases, some of which are *Morrison* v. *Schorr*, 197 Ill. 554; *Howe* v. *Hodge*, 152 Ill. 252, and *Ryan* v. *Allen*, 120 Ill. 648. Appellant contends that by the application of such rule, the children of settlor took a fee and she, as their legal heir, received the same kind of title under the deed of trust. Appellees contend that such rule has been repudiated and rely upon *Foley* v. *Nalley*, 351 Ill. 194, as showing an abandonment of such doctrine. The question in the *Foley case* was not the same as the one presented on this appeal and nothing was stated in said case rejecting the application of the principle to a proper state of facts. The question then is as to whether this is a proper case for application of the rule. The intent of settlor was to separate the equitable estate in the income from the legal title and empower the trustee to collect and distribute it. To apply the rule with the force claimed by appellant would do violence to settlor's plan. Furthermore, if it was applied to the estates given settlor's three children for life and then to their legal heirs, that would create the same kind of estates in the life tenant and those taking as their legal heirs. The two having been created by the same instrument would come within the rule in *Shelley's case* and vest the fee-simple title in the life tenants. The result would be that upon the death of each of the children, the title passed by descent and Maude Hanley Branca, as the survivor, held a title which she could dispose of by will.

The trust as to the income did not, by its terms, terminate upon the death of the three children, for it provided that in the event of the death of the three the income should go to their legal heirs. The chancellor held that the settlor intended the trust to continue for the duration of the lease. We find that the instrument supports such construction. The granting clause conveyed the *corpus* "to Daniel A. Loring, Sr., and his successors and assigns forever in trust." It directed that the lots should be held "to the said Daniel A. Loring, Sr., trustee and his successors or assigns to his and their own use and behoof forever." Four persons were named as successors in trust, they to act collectively. Provision was made to fill vacancies that might occur among the trustees by action of the surviving trustees. The instrument directed that the vacancies should continue to be filled "until the end of the trust hereby created." Provision was also made whereby, under certain circumstances, a corporate trustee might be appointed as successor "to carry out the trust herein provided." By another provision the successor trustees were enjoined from mortgaging or encumbering the trust property "during the continuance of the aforesaid lease." The three beneficiaries and their legal heirs were prohibited from encumbering their respective shares of the income "during the term of the aforesaid lease." There is this further fact which has a bearing on the question. Reference was made in the trust agreement to the lease and the facts stated in the trust instrument definitely identify the 99-year lease and make every direction subject to its terms. The settlor knew the terms of the lease and by one of its provisions it was agreed that, at the expiration of the lease, the buildings which had been erected on the lots by the lessee were to be appraised and the lessor was to either pay the appraised value or extend the lease for another 99-year period, subject to certain adjustments of rentals.

If it had been the intention of settlor to create a trust to extend beyond the period of the lease, undoubtedly she would have made provision empowering the trustee and his successors in trust to act when such event occurred. Appellant calls particular attention to the phrases "forever in trust" in the granting clause, and "their own use and behoof forever." These phrases do not control the duration of the trust. If the purpose for which the trust was created has been completed, the trust may be closed, notwithstanding the granting words purported to convey a title which would continue for a period beyond the execution of the trust. When the trust was created in 1893 the lease had approximately 91 years to run.

The further question is as to whether the estates created in and payable out of the income violated the rule against perpetuities. A concise statement of the rule which is often quoted from Gray on Rule Against Perpetuities, 1915, chap. 6, p. 174, is that "No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." It is applicable to contingent future interests and not to interests that are vested. (*McKibben* v. *Pioneer Trust & Savings Bank,* 365 Ill. 369.) It is directed at the beginning of the interest and is not involved in the postponement of its enjoyment. (*Ashmore* v. *Newman,* 350 Ill. 64; *Nicol* v. *Morton,* 332 Ill. 533; *Easton* v. *Hall,* 323 Ill. 397.) In applying the rule, the court first construes the instrument creating the estates or interests and ascertains the intent of the maker of the instrument. When that intention has been thus determined, the rule is applied, and if it is found that an estate or interest may not be vested within the period prescribed by the rule, then the rule has been violated and the estate attempted to be created must fail. *Aldendifer* v. *Wylie,* 306 Ill. 426; *Dime Savings and Trust Co.* v. *Watson,* 254 Ill. 419.

The trustee's duty was to collect the rents, deduct certain expenses and "pay the balance of the net income to the said Maude Hanley, Dora Blodgett and William A. Hanley in equal monthly payments, share and share alike." This was a gift *inter vivos* of a one-third of the net income to each of settlor's three children. Other provisions are conclusive that it was not intended as a gift to them as a class. The condition that if a child should die leaving lawful issue the share of such deceased child should go to such issue, and the gift over to the survivor of the three in the event any one of them died without lawful issue are indicative of an intent to dispose of each one-third on a distinct basis. We have indicated that the estate to settlor's children was a life estate. The estates to the lawful issue of a deceased child and the gift over to the survivors, if there was no lawful issue, were also life estates limited to them for and during the life of the survivor of the children. After the death of the survivor, each one-third was payable to the "legal heirs" of the three children. It is conceivable that person or persons who were lawful issue of one of the children at the time of his or her death might be a "legal heir" at the death of the survivor, but it is also possible that one who was a "legal heir" at the death of the survivor was not a lawful issue.

The word "legal" preceding the word heirs is of no consequence in construing the meaning of the word "heirs." The word "heirs" has a technical meaning and when used in a deed or will it is presumed to have been used in its technical sense, that is, as denoting the whole of the indefinite line of inheritable succession. (*Carpenter* v. *Hubbard,* 263 Ill. 571.) Indeed, if given any different meaning, appellant's claim would be barred, for she was only a first cousin of settlor's three children. The class designation of legal heirs of the three children was intended to

include all those persons who, at the death of the survivor, stood in that degree of relationship to any one of them which would bring them within the class of legal heirs. The intent of the settlor must be judged by the language used in the light of the circumstances surrounding the execution of the trust rather than by the result of an unusual chain of circumstances extending through more than fifty years, which leaves appellant as the sole heir of all three. Furthermore, the instrument evidences an intent to depart from the usual rule of determining the legal heirs of a person at death and, as to the two who died first, to postpone the time for determining heirship until the death of the survivor of the three.

Since the point of time for determining the legal heirs of the two who died first is postponed until the death of the survivor of the three, it is pertinent to see whether the gifts over to the legal heirs of the two were to vest upon a condition that might not happen within the life or lives in being when the trust was created and twenty-one years thereafter. It is clear that the estate in the income which would vest in the legal heirs of the survivor would not be within the rule against perpetuities, but the situation is different as to the legal heirs of the other two. As to the two who died first, their legal heirs were not determinable until the survivor of the three children died. It is not a case where a gift to a class may open up to admit after-born children, for here there is no one who can qualify as a member of the class until the time when the class is to be determined, that is, at the death of the survivor. It was possible that a person qualifying as a legal heir at the death of the survivor was born more than twenty-one years after the death of life or lives in being when the trust was created. This possibility is fully demonstrated by the facts surrounding the share of William A. Hanley. He died in 1919, which was 26 years after the trust was created. As to his share, his death was the

end of the life in being when the estate was created. However, if he had left issue born to him after the trust was created and such issue died after he was deceased, leaving a child born more than 21 years after the death of William A. Hanley, then the vesting of the title would be beyond the period embodied in the rule.

The next question is as to the effect such void provision had upon the life estates created for the three children. The chancellor held the invalidity of the gifts over destroyed the life estates. The general purpose of the trust was to direct the distribution of the rents for the unexpired part of the lease, 91 years. The settlor used care in naming and providing a means for perpetuating the trustees for the full period. However, this was secondary to her real purpose, that of being able to direct the distribution of the income for such period to those whom she thought should be the recipients of her gifts. In providing for this plan, provision was made to meet the conditions that would arise if her children should not live to enjoy the income during the period of the lease. The gift over to the heirs was as much a part of the plan as the gift to the children for life. One cannot be sustained and the other held void without defeating the intention of the settlor. Under such circumstances, the entire scheme and all provisions with regard to the life estates were rendered invalid. *Johnston v. Cosby*, 374 Ill. 407; *Millikin Nat. Bank v. Wilson*, 343 Ill. 55; *Lawrence v. Smith*, 163 Ill. 149.

The invalidity of the trust provisions of trust instrument No. 1 left the title to the lots in Mary E. Hanley, subject only to the 99-year lease. At her death in 1909, such title passed as intestate property to her three children as tenants in common. As such owners, they, in 1917, became the settlors of the trust created by the second trust instrument. Appellant's claim to title in the lots by virtue of this trust instrument rests solely in the provision which

terminates the trust and undertakes to dispose of the *corpus*. It directs that at the death of the survivor of the settlors, the trust should end and the property should "be and become the property of the legal heirs of the said Maude Hanley Branca, Dora Blodgett and William A. Hanley in equal shares *per stirpes* and not per capita." The equitable estates, or interests in the income, were life estates. Upon the death of the survivor of the settlors, the legal title, which prior thereto had been vested in the trustee, ended and the life estates in the income terminated. If the provision that the property should be and become the property of the legal heirs of the settlors was a remainder, then it did not pass by descent as intestate property nor was it subject to testamentary disposition by the survivor of the settlors, Maude Hanley Branca. On the other hand, if no remainder was created then it was a reversionary interest in the settlors with the incident of passing by inheritance as intestate property and capable of being disposed of by will. It is not necessary to determine whether the estate passing to the legal heirs was a vested or contingent remainder. The primary question is as to whether the instrument created a remainder of any character. At this juncture the distinction should be noted between a gift to the heirs of a holder of a life estate and one to the heirs of the grantor. This case is of the latter class and involves the rule of the common law that one who owns real estate cannot, either by conveyance or by limitation of uses, make his heirs purchasers. The word "heirs" in such cases is regarded as defining or limiting the estate which the first taker has and those who were his heirs do not take the estate as remaindermen under the deed. If they take as heirs it is by descent from the grantor and not under the deed. (*Burton* v. *Boren*, 308 Ill. 440; *Biwer* v. *Martin*, 294 Ill. 488; *Akers* v. *Clark*, 184 Ill. 136; *Doctor* v. *Hughes*, 225 N. Y. 305, 122 N. E. 221.) The persons who may become heirs of

the grantor at grantor's death have, prior to the happening of such event, nothing but an expectancy which may be barred by deed or will.

Appellant contends for a construction which would fix the time for determining the legal heirs of the settlors as of the date of the death of the survivor rather than at the death of each. Under the views expressed, this is immaterial, for the persons who could qualify as legal heirs, determined either at the death of each settlor or at the death of the survivor, are the heirs of the ones who conveyed the property and the principle that a grantor cannot make his heir a purchaser applies in either case.

Appellees contend that the provision in question is subject to the rule in *Shelley's case*. In the *Hughes case,* where the same question was urged to a similar provision in a deed, it was said, "This rule, that a reservation to the heirs of the grantor is equivalent to the reservation of a reversion to the grantor himself, is not to be confused with the rule in *Shelley's case*. The two are quite distinct. * * * The one applies only to the acts of an ancestor as between him and his own heirs. * * * The other is confined to the limitation of estate of inheritance to the heirs of a person who has taken under the same instrument a prior estate of freehold." Furthermore, the estate to the settlors for life and the estate to the remaindermen were not of the same character. One was an equitable, the other a legal estate. Appellees urge other grounds to show why appellant did not take title by virtue of trust instrument No. 2. The views expressed dispose of appellant's rights and the other points urged will not be considered. The title to the lots in question passed by the will of Maude Hanley Branca to the beneficiaries therein named.

Cross appellants' interest arises out of the 99-year lease. The controverted questions of title to the lots were determined subject to the lease and accordingly cross appel-

lants were not directly concerned with the title issues. The controversy on the cross appeal in general is between the holders of the title as successors to the lessor on the one side, and the assignees of the lessee and those in privity with them on the other.

As previously stated, the trustees acting under the two trust deeds instituted this suit for the purpose of obtaining directions in reference to their trust duties and to obtain approval of a contract entered into by the trustees and cross appellants on June 16, 1942. The contract was signed by cross appellants, the trustees, and other parties in interest. It contained a clause which, after expressing a doubt as to the effect of the two trust instruments and the power conferred upon the trustees thereunder, provided that "Although this agreement is signed by the parties, it is understood and agreed that the same shall not become final and binding unless and until it shall be confirmed and approved by the final order or decree of such a court of competent jurisdiction entered in appropriate proceedings wherein all persons beneficially interested under said trust shall become bound by such order and decree." The trustees agreed to file a suit to obtain court approval of the contract, and in compliance therewith this suit was filed August 21, 1942. On March 16, 1943, cross appellants filed their answer, in which they joined with the trustees in asking the court to approve the contract. Thereafter evidence was heard, and on September 13, 1943, the chancellor rendered an opinion disposing of all the issues in the case. In the written opinion, made a part of the record, he stated that no argument had been made against the approval of the acts of the plaintiffs as trustees with reference to the execution of said operation agreement and all of the parties before the court are apparently in accord that the same should be approved. The decree to be signed in accordance with said opinion was not filed until February 2, 1944. In December, 1943, cross appel-

lants sought leave of court to file a petition to have the agreement of June 16, 1942, disapproved on the ground that such agreement was void. Leave to file such petition was denied January 27, 1944. On February 9, 1944, some of the holders of bonds, which bonds were secured by lien on cross appellants' lease, filed an answer in which they sought to set up matters to set aside the contract. All but the formal parts of such answer was stricken on motion. On two other occasions subsequent to the entry of the decree of February 2, some of cross appellants sought leave to file an amended and supplemental answer, which was denied. The cross appeal was taken from the decree entered February 2, 1944, and the orders entered denying cross appellants leave to file amended and supplemental answer.

Certain parties who owned bonds that are secured by liens on the leasehold interest are included as cross appellants. They concede that the filing of an amendment to a pleading after issue has been joined is a matter that rests largely within the discretion of the trial court and that this court will not reverse an order denying leave to make such an amendment when no excuse is shown for not having included the substance of the proposed amendment in the original pleading. To meet such theory, cross appellants claim, as an excuse for not having pleaded the matters in the original pleading, that the trustees did not disclose the material facts to the bondholders; that there was misrepresentation of facts; that by reason of matters unforeseen and unanticipated, due entirely to war conditions, the financial condition of the hotel company had changed for the better, and that the hotel is now operating to capacity, and, finally, that it could not comply with the provision of the contract which required them to gain consent of certain beneficiaries before making the improvements provided for in the contract.

The International Hotel Company, as cross appellant, urges that the complaint and its original answer did not present any justiciable issue; that, since all parties filing pleadings asked for approval of the contract, no issue was raised and there was no question to litigate in reference to the approval of the contract.

The purpose for which this suit was to be instituted was set forth in the contract. There were several persons interested in the title to the lots, the lease and the income therefrom, and undoubtedly the purpose of requiring court sanction of the trustees' signing the instrument was to place all parties in interest in a position where a decree of the court could be pleaded against them in any action questioning the action of the trustees. Cross appellants had their day in court and an opportunity to plead all matters pertaining to the concealment and misrepresentation of facts. Clearly, the amendment to show improved financial status of the hotel company and its more solvent condition, all of which developed after the court rendered its opinion on September 13, 1943, was properly excluded.

It is possible that one of the considerations for the execution of the contract was that court approval of the trustees' action was to be obtained. It should be noted that this contract dated June 16, 1942, dealt with rentals which had accrued prior to that time and also undertook to change terms of the rental payments under the original lease for a period extending to December 31, 1951. Evidently, no one could question but what the right of the trustees under the second trust instrument to contract in reference to future rents was subject to the death of Maude Hanley Branca, which event would terminate the trust, and the requirement of obtaining court approval was as much for the protection of cross appellants as for the trustees. Cross appellants have not shown a good excuse for omitting from their original pleadings the facts which they sought to bring in by amendment. The court

did not err in denying them the privilege of filing such amendments.

Cross appellants contend that the contract was a mere offer until approved by court decree and, as such, was revocable anytime before it was approved. All parties to the contract recognized that it would take time to obtain a decree approving the contract and accordingly it was agreed that the contract should be complied with during such interim. Following its execution both parties recognized the contract and complied with its provisions. No action was taken to revoke the agreement until sixty days after the court had rendered its opinion. Under such circumstances, it would be inequitable to permit cross appellants to avoid the provisions of their contract.

For the reasons assigned, the decree of the superior court is affirmed.

*Decree affirmed.*

Mr. JUSTICE GUNN, dissenting:

I dissent from the majority opinion in this case for the reasons hereinafter set forth.

I think the majority opinion inaccurately holds that the duration of trust No. 1 is ninety-nine years. I find nothing in the language of the trust that either directly or by inference limits it to this term, for the following reasons:

1. The property in which the trust is declared is lots ten (10) and eleven (11), etc. "to Daniel A. Loring, Sr., and to his successors and assigns forever in trust, subject to a lease of ninety-nine years." It does not purport to convey the lease, which has a duration of ninety-nine years, but the freehold, which would carry with it the right to collect rent from any lease existing thereon.

2. At the time the trust was created the lease had been in effect for eight years, and therefore there is no indication that the remnant of a term, of ninety-one years, described the period of the trust as coinciding with the period of the lease commencing years before.

3. The length of the lease cannot have been contemplated, because it was possible or probable that the lease would be terminated before the expiration of ninety-nine years, and, in fact, the record in this case shows that re-negotiation was necessary to keep the lease alive. It cannot be contended that if, a short time after the trust was executed, necessity required canceling the lease for breach of condition or failure to pay rent, the trustees would not be authorized to make a new lease which might be of a different duration. And, finally, there was a power given to sell the freehold subject to the lease, and to hold the proceeds upon the same trusts, without reference to duration or to the lease.

It is my opinion that the trust was not fixed at a period of ninety-nine years, but for a period of time which would be covered by the lives of the three beneficiaries and those taking under the various alternative provisions of the trust, none of which specify or infer a period of ninety-nine years. In my opinion this determination of the term of the trust has led to an erroneous conclusion as to the application of the rule against perpetuities.

In applying the rule against perpetuities to the first trust the majority opinion entirely overlooks the fact that the last provisions, with respect to vesting title in the legal heirs of the beneficiaries, do not apply in case one of the beneficiaries dies leaving lawful issue; and also, in my opinion, erred in the holding that the end of the life of each original beneficiary living at the date of the trust was the one which started the running of the twenty-one year period after a life in being. This construction cannot be given this trust. There is nothing in it which singles out one life. The rule is that if the interest vests during any one of one or more lives which exist at the date of the trust and twenty-one years thereafter it is good. This is not only illustrated, but definitely held in *Madison* v. *Larmon*, 170 Ill. 65; *Thellusson case*, 11 Ves. 112; *Green-*

*leaf* v. *Greenleaf,* 332 Mo. 498, 58 S. W. 2d 448; *Estate of Friday,* 313 Penn. 328, 170 Atl. 123, and *Fitchie* v. *Brown,* 211 U. S. 321, as well as by most standard text-book writers.

Under the provisions of the trust, if one beneficiary dies leaving lawful issue its share vests immediately in such issue, and the latter becomes entitled to one third of the income. On the other hand, the clause providing for the income to vest in the legal heirs of the beneficiaries upon the death of all cannot violate the rule because the legal heirs of one or all of the beneficiaries are ascertained immediately following the death of the last survivor, so in any event the interest would vest within the period fixed by the rule.

The rule only requires that the estate vest within the fixed time, as possession or enjoyment is immaterial. (*O'Hare* v. *Johnston,* 273 Ill. 458; *Flanner* v. *Fellows,* 206 Ill. 136; *Lunt* v. *Lunt,* 108 Ill. 307.) The term "issue" or "lawful issue" means lineal descendants. (*Arnold* v. *Alden,* 173 Ill. 229; *Robeson* v. *Cochran,* 255 Ill. 355.) "Lawful issue" and "legal heirs" have different meanings. Lawful issue of one will always qualify as a legal heir, but legal heirs in many instances are not lawful issue, since an heir may be one who is not a descendant.

In the present case there is no need for confusion upon this point. If one of the beneficiaries at the time of his death has lawful issue the trust provides "the share of such deceased beneficiary to go to such issue." This settles the vesting and enjoyment of one third of the trust, and a like result would follow in each of the other shares if the beneficiaries died and left lawful issue, as in each case the beneficiary's share would immediately, upon death, go to the lawful issue, and no question of perpetuity could possibly arise, as both the vesting and enjoyment of the income of each one-third interest would immediately follow the death of the original beneficiaries, and therefore the

clauses of the trust with respect to alternative provisions in behalf of a survivor, or the death of all of the beneficiaries without issue would have no application, because such provisions would become useless upon vesting of the interest in the issue.

The trust also makes provision in the case of the death of the beneficiary without issue (not heir,) and provided "the share of such deceased beneficiary to be equally divided by the survivor or survivors." Here is no perpetuity for under the conditions named the interest vests immediately after the death of the beneficiary. And in like manner the same provision is made until the death of all. If the survivor of the three died leaving issue, it would take all, as the issue of one who had acquired the entire interest by survivorship. In this instance there could be no possible violation of the rule against perpetuities, because it would pass immediately upon the death of the third beneficiary, who was a life in being at the date of the creation of the trust.

We then come to the last contingency, which provides "and in the event of the death of all three of said beneficiaries, then the income of said property is to be divided equally among the legal heirs of said beneficiaries by said trustee, or his successors." The opinion, at least by inference, makes this provision control the ultimate passing of the interest and all the other provisions in the trust, without regard to circumstances which may make the principles discussed above applicable. Taking the entire trust instrument into consideration, it is clear this last contingency contemplates it is to apply in cases where no issue of a beneficiary takes it prior to this time. It is a final alternative provision for those who are to enjoy the income. If issue is born as to that share the last provision cannot apply. If all die without issue then the legal heirs of the original beneficiaries are those who will take and

enjoy it, but this provision does not violate the rule against perpetuities for two reasons: (1) If there is issue the interest has already vested under the first contingency. If there is no issue then it goes to the survivors. There is no violation. (2) When all die without issue it then goes to the legal heirs of the three. Here can be no violation because it is within the twenty-one years of the death of the last survivor.

Even if the duration of the trust is assumed to not exceed ninety-nine years, there is no violation of the rule, because this term does not control the time when the trust terminates. The estate will vest in the legal heirs of the beneficiary within three lives in being and possibly less, if issue survives a beneficiary. Any possible taker is not barred by the rule.

I am of the opinion the first trust is not void, in which event the second trust could not be given the effect attributed to it in the opinion. Since no issue was born to any of the beneficiaries, and appellant qualified as the only "legal heir," upon their death it follows she has, at least, a life estate in the income, which would make the provision terminating the trusteeship in the second instrument invalid.