HARRIS TRUST AND SAVINGS BANK *et al.,* Plaintiffs, v. FRANCES GLORE BEACH *et al.,* Defendants-Appellants (California Institute of Technology *et al.,* Defendants-Appellees).

First District (3rd Division)   No. 85—1649

Opinion filed June 25, 1985.

Bell, Boyd & Lloyd, and Sidley & Austin, both of Chicago (Frances J. Higgins, Robert L. Wiesenthal, Alice S. Lonoff, Loren E. Juhl, Henry A. Preston, and John C. Vryhof, of counsel), for appellants.

Winston & Strawn, of Chicago (Frederick G. Acker, Kimball R. Anderson, Carol A. Harrington, and Nancy J. Brown, of counsel), for appellees.

JUSTICE McNAMARA delivered the opinion of the court:
Frank P. Hixon established two trusts 60 years ago under which his second wife, Alice, was to enjoy the income for life and upon her death the principal was to be given to Hixon's heirs. Alice died in 1982. The trustees, Harris Trust and Savings Bank, Robert Hixon Glore, and William S. Gray III, now seek instructions regarding distribution of the estate. The issues on appeal are whether the doctrine of worthier title is applicable; and whether the class of heirs is to be de-

termined at Hixon's death in 1931, or at Alice's death in 1982. The trial court found that the class is to be determined at Hixon's death. It thus granted summary judgment against the grandchildren and great-grandchildren of Hixon, and instructed the trustees to distribute the property to beneficiaries under the wills of Hixon's deceased daughters. The grandchildren and great-grandchildren appeal. In a factually related opinion filed by this court today, we have determined the proper distribution of property left by Hixon under a testamentary trust. (*Harris Trust & Savings Bank v. Beach* (1986), 145 Ill. App. 3d 682.) The legal issues there, however, are unrelated to the issues pertaining to the *inter vivos* trust addressed in the present case.

On March 30, 1921, in anticipation of marrying Alice, Hixon created a trust in the form of an antenuptial agreement under which Alice received a life estate in the net income and a general testamentary power of appointment over $50,000 of the principal, which power Alice exercised in her will. The purpose of the trust was to "make suitable provision" for Alice "in lieu of any dower, interest or claim that she might have" to Hixon's estate. Upon Alice's death, the principal was to be "divided among the heirs of [Hixon], share and share alike." In 1926, Hixon created a second trust for Alice "in addition to *** the trust created by the antenuptial contract of March 30, 1982." The 1926 trust provided Alice with the net income for life, and upon her death the principal was to be "distributed equally among my heirs." The corpus of each trust was stock of Pioneer Investment Company, an investment holding company of which Hixon was president, a director and principal stockholder.

Hixon died in 1931, survived by two daughters, Ellen H. Glore and Dorothy H. Clendening, who both died in 1973. Dorothy had no children. Ellen had three children, defendants Robert H. Glore and Frances Glore Beach (grandchildren), and Charles F. Glore, Jr., who is deceased. Charles had three children, defendants Charles F. Glore III, Sallie Glore Farlow and Edward R. Glore (great-grandchildren). The beneficiaries under Dorothy's will, defendants California Institute of Technology, Santa Barbara Foundation, Santa Barbara Cottage Hospital, the Kansas University Endowment Association (charities), and Frederick Acker, as special trustee under the will of Charles F. Glore, Jr., contend that the heirs should be determined as of 1931, when Hixon died, thus limiting the class of heirs to Dorothy and Ellen. This would permit these parties to take as beneficiaries under Dorothy's will.

The grandchildren and great-grandchildren counter that the class of heirs should be determined as of 1982, when the life tenant, Alice,

died, thus including these defendants. They also maintain that the doctrine of worthier title must be applied, thus creating a reversion in Hixon and permitting them to inherit by descent.

The trial court awarded summary judgment in favor of the charities. Although it noted that our supreme court had found the doctrine of worthier title to be a rule of law in several instances, it applied the doctrine as a rule of construction. In construing the trust language, the court found that Hixon did not intend a reversion, but rather intended a remainder in his heirs. The court also found that the class of heirs was to be determined at the time of Hixon's death, and not at the time of Alice's death. Thus, the class of heirs was limited to Hixon's two daughters, and the charities would take under Dorothy's will.

■■ ■ We first address the issue of whether the doctrine of worthier title is applicable to the present case. Under the doctrine when the owner of a fee simple attempts to create a life estate with a remainder to his own heirs, the remainder is void. The grantor keeps a reversion. "Thus, A conveys to B for life, and after B's death to the heirs of A. By virtue of the rule the state of the title is: life estate in B, reversion in fee simple in A." (C. Moynihan, Introduction to the Law of Real Property 150 (1962).) The practical effect of the doctrine, then, is that the heirs are prevented from the intestacy statutes or under the residuary clause of the grantor's will. In the present case, the grantor, Hixon, made an *inter vivos* conveyance to Alice for life, and after Alice's death to the heirs of Hixon. If the doctrine of worthier title is applied, the state of the title was: life estate in Alice, reversion in fee simple in Hixon. The heirs take nothing under the trust, and would only take under the residuary clause of Hixon's will. Consequently, we must determine if Illinois law mandates the use of the doctrine of worthier title for these two trusts, and if so, whether it is a rule of construction or a rule of law.

The common law applied the doctrine as a rule of law. (C. Moynihan, Introduction to the Law of Real Property 155 (1962)). Thus, if the grantor clearly intended to give a remainder to his heirs, the doctrine applies so as to render that gift void. Then, in *Doctor v. Hughes* (1919), 225 N.Y. 305, 122 N.E. 221, the court applied the doctrine of worthier title as a rule of construction. The court held that the doctrine will result in a reversion unless the grantor clearly intended to create a contingent remainder in his heirs. However, the intention to transform the reversion into a remainder must be clearly expressed. *Doctor v. Hughes* (1919), 225 N.Y. 305, 122 N.E. 221.) Many other jurisdictions followed the lead of New York and now accept the doc-

trine as a rule of construction. (See generally C. Moynihan, Introduction to the Law of Real Property 156 (1962); H. Carey & D. Schuyler, *Illinois Law of Future Interests* sec. 124, at 194-95 (1941); R. Powell, *Real Property* sec. 381, at 311 (1984); L. Simes & A. Smith, *Law of Future Interests* secs. 1605—10 (2d ed. 1956).) Other states have abolished the doctrine. See Ill. Rev. Stat. 1955, ch. 30, par. 188 (the abolition was given only prospective application).

Illinois courts have most recently applied the doctrine of worthier title as a rule of law, and not as a rule of construction. In *Corwin v. Rheims* (1945), 390 Ill. 205, 61 N.E.2d 40, the court applied the doctrine as a rule of law. (Accord *Biwer v. Martin* (1920), 294 Ill. 488, 128 N.E. 518; *Akers v. Clark* (1900), 184 Ill. 136, 56 N.E. 296.) In *McNeilly v. Wylie* (1945), 389 Ill. 391, 59 N.E.2d 811, the court recognized in *dicta* that other jurisdictions apply the doctrine as a rule of construction. The court, however, goes on to recite the Illinois law as the common law doctrine, *i.e.*, a rule of law, without including any limiting effect. Some Illinois courts have avoided the inflexible effect of the rule of law by finding that the rule is inapplicable because the estate passed to the remainderman differs from the estate originally given by the grantor. (See, *e.g.*, *McNeilly v. Wylie* (1945), 389 Ill. 391, 59 N.E. 811 (estates differ because devise lapsed); *Boldenweck v. City National Bank & Trust Co.* (1951), 343 Ill. App. 569, 99 N.E.2d 692 (estates differ because heirs are to be determined at a subsequent time).) Illinois courts, however, have also applied the doctrine as a rule of construction. See *May v. Marx* (1939), 300 Ill. App. 144, 20 N.E.2d 821 (court treats doctrine as a rule of construction, but finds a reversion in the settlor because the settlor's language did not indicate that he intended a remainder); *Lawrence v. Lawrence* (1899), 181 Ill. 248, 54 N.E. 918 (settlors create trust for their benefit for life and then to their heirs; court finds remainder in heirs without discussion of property interests created in the trusts); *Sutliffe v. Aydelott* (1940), 373 Ill. 633, 27 N.E.2d 529 (court applies doctrine, erroneously calling it the Rule in Shelley's Case, as rule of construction, but finds a reversion).

Although some confusion exists in the Illinois cases as to whether the doctrine of worthier title is a rule of law or construction, we look to our most recent supreme court cases (see *McNeilly v. Wylie* (1945), 389 Ill. 391, 59 N.E. 811; *Corwin v. Rheims* (1945), 390 Ill. 205, 61 N.E.2d 40), and the Illinois legislature's abolishment of "the rule of the common law" (Ill. Rev. Stat. 1955, ch. 30, par. 188), and we find that Illinois treats the doctrine as a rule of law for trusts created at the times of the Hixon trusts. Consequently, in the present case, ap-

677

plication of the doctrine of worthier title results in Hixon's retention of a reversion. His heirs take only under the residuary clause of his will, which provides for the distribution of one-third of the residuary property to each daughter and one-third to surviving grandchildren. The heirs do not take under the trust. The trustees, therefore, are directed to distribute the trust property to the beneficiaries under the residuary clause of the will.

In view of our holding, it is unnecessary to consider the other argument of the grandchildren and great-grandchildren that the class of heirs should be determined as of 1982, when the life tenant, Alice, died.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed, and the cause is remanded for instructions to enter judgment in accordance with the holdings of this opinion.

Reversed and remanded.

RIZZI, P.J., and McGILLICUDDY, J., concur.