(No. 29315.—

JOSEPHINE FRANKS GLASER *et. al.*, Appellees, *vs.* CHICAGO TITLE AND TRUST COMPANY *et al.*—(MOSES LEVITAN *et al.*, Trustees, Appellants.)

*Opinion filed March 20, 1946—Rehearing denied May 16, 1946.*

448

HARRY H. KRINSKY, and JAMES J. GLASSNER, both of Chicago, for appellants.

LEVINSON, BECKER & PEEBLES, (DON M. PEEBLES, of counsel,) and FREDERIC A. FISCHEL, guardian *ad litem,* (MAX J. SATIN, of counsel,) all of Chicago, for appellees.

Mr. JUSTICE SMITH delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Cook county. The case involves the construction of certain provisions of the last will and testament of Jacob Franks, deceased. Jacob Franks died on April 18, 1928. He left surviving Flora G. Franks, his widow, Josephine Helene Franks, his daughter, and Jack Morris Franks, his son, as his only heirs-at-law. His will was duly admitted to probate by the probate court of Cook county.

By his will, he first provided for the payment of debts and funeral expenses and the distribution of his household goods and effects. Then, after making a specific legacy to his wife, Flora G. Franks, of $100,000, in fulfillment of an antenuptial agreement, he provided for the payment of $2000 per month to her by his executors from the date of his death until his estate should be turned over to the trustees named in the will. By paragraph six, he bequeathed all the rest, residue and remainder of his estate to Chicago Title and Trust Company and certain individuals, as trustees.

By the seventh paragraph, he directed his trustees to set aside property or securities in the sum of $250,000 to be known as the Flora G. Franks Trust. He provided that

the income from this trust be paid to his widow, Flora G. Franks, during her life. He then made provision for the distribution of the *corpus* of the Flora G. Franks Trust to his daughter Josephine and his son Jack, upon the death of his widow. Thereafter, the widow died. The Flora G. Franks Trust was fully administered, and upon her death the funds and property remaining in that trust were distributed by the trustees, in accordance with the will. The Flora G. Franks Trust, having terminated and been fully executed, is not involved in this litigation.

By the eighth paragraph of his will, he made a bequest to Rosehill Cemetery for the perpetual care and upkeep of his cemetery lot. By the ninth paragraph, he directed his trustees to expend $100,000 for the establishment of a memorial to perpetuate the memory of his deceased son, Robert A. Franks. By the tenth paragraph, he directed his trustees to set aside all the rest, residue and remainder of the estate in a fund to be known as Josephine Helene and Jack Morris Franks Trust. It is the provisions of the will creating this trust which are involved in this cause. All of the specific legacies, except the annuities provided for in paragraph eleven, and the bequests provided for by paragraph twelve, have been paid, and all of the other provisions of the will have been fully executed and carried out.

By the eleventh paragraph of the will, he directed his trustees to pay, from the income of the trust, to each of thirteen named nephews and nieces, an annuity of $1000 per year during their respective lives. By the twelfth paragraph, he directed that upon the death of each of the annuitants named in paragraph eleven leaving issue, the trustees pay out of the principal of the trust the sum of $15,000 to the issue surviving each deceased annuitant.

By the thirteenth paragraph, he directed the trustees, subject to the payment of the annuities provided in paragraph eleven and the payment of the bequests contained in

the twelfth paragraph of the will, "to pay over and distribute the net income of said Josephine Helene and Jack Morris Franks Trust, and the principal of said Josephine Helene and Jack Morris Franks Trust," as thereafter provided in said paragraph thirteen.

Subparagraph (a) of paragraph thirteen, is as follows: "(a) To pay and apply one-half (½) of the remaining net income, or so much thereof as they may deem necessary, to the support, maintenance and education of my daughter, JOSEPHINE HELENE FRANKS, until she attains the age of twenty-one (21) years, and to accumulate and invest the balance of such one-half (½) of the remaining net income, if any, and upon my said daughter, JOSEPHINE HELENE FRANKS, attaining the age of twenty-one (21) years, to pay over and transfer to her all such accumulations. After my said daughter, JOSEPHINE HELENE FRANKS, attains the age of twenty-one (21) years, I AUTHORIZE, EMPOWER and DIRECT my said Trustees to pay over to her during her natural life, in quarter-yearly instalments as near as may be, such one-half (½) of such remaining net income."

By subparagraph (b) of paragraph thirteen, he made a similar provision for the payment of the other one-half of the remaining net income of the trust to his son Jack.

By subparagraph (c) of paragraph thirteen, he made provision for the distribution of one half of the principal or *corpus* of the trust to the surviving issue of his daughter or son, in the event either should die leaving issue prior to the death of the other. By subparagraph (d) of paragraph thirteen, he made provision for the termination of the trust and for the distribution of the principal of the trust upon the death of the survivor of his daughter and his son. Those subparagraphs are as follows:

"(c) Upon the death of either my daughter, JOSEPHINE HELENE FRANKS, or my son, JACK MORRIS FRANKS, leaving lawful issue her or him surviving, I AUTHORIZE, EM-

POWER and DIRECT my said Trustees to set aside, from the principal of said JOSEPHINE HELENE AND JACK MORRIS FRANKS TRUST, property which in their opinion will be sufficient to pay the annuities and bequests provided to be paid by paragraphs numbered ELEVENTH and TWELFTH of this, my Last Will and Testament, and to pay over and distribute one-half (½) of the remaining principal of such JOSEPHINE HELENE AND JACK MORRIS FRANKS TRUST to the lawful issue of such deceased son or daughter, such lawful issue to take per stirpes and not per capita.

"(d) Upon the death of the survivor of my said daughter, JOSEPHINE HELENE FRANKS, and my said son, JACK MORRIS FRANKS, my said Trustees shall pay over and distribute to her or his lawful issue her or him surviving, per stirpes and not per capita, all the remaining property held in such JOSEPHINE HELENE AND JACK MORRIS FRANKS TRUST, except the property directed by sub-paragraph (c) of this paragraph numbered THIRTEENTH to be held to ' pay the annuities and bequests provided to be paid by paragraphs numbered ELEVENTH and TWELFTH of this, my Last Will and Testament. If any property shall be retained by my said Trustees for the purpose of making the payments of such annuities and bequests directed to be made by paragraphs numbered ELEVENTH and TWELFTH of this, my Last Will and Testament, and if any of such property shall remain after all payments directed by said paragraphs numbered ELEVENTH and TWELFTH have been made, then such property so remaining shall be paid over and distributed, one-half (½) to the lawful issue then surviving of my daughter, JOSEPHINE HELENE FRANKS, and one-half (½) to the lawful issue then surviving of my son, JACK MORRIS FRANKS, or if either my said daughter, JOSEPHINE HELENE FRANKS, or my said son, JACK MORRIS FRANKS, has no lawful issue them surviving, then all of said property shall be paid over and distributed to the lawful issue of the other then surviving. Wherever

in this paragraph numbered THIRTEENTH, provision is made that any property shall be paid over or distributed to the lawful issue of my daughter, JOSEPHINE HELENE FRANKS, or my son, JACK MORRIS FRANKS, such lawful issue shall take per stirpes and not per capita."

By paragraph fourteen, he provided that any legatee, devisee or beneficiary who should contest the will should forfeit all rights under the will. No legatee, devisee or beneficiary contested the will and, consequently, paragraph fourteen never became operative. By the remaining paragraphs of his will, he made provisions which are immaterial to the questions here involved. The estate was fully administered in due course and the property turned over to the trustees, who are now administering the trust.

The event out of which the controversy here involved arose was the death of the son Jack without issue. He died in 1938, after the death of the widow. He never married and left no issue him surviving. His sister Josephine was his sole heir-at-law. She is still living and now has three living minor children. Jack Franks left a last will and testament in which he devised and bequeathed his estate and property to three trustees, who are the appellants in this cause.

The proceeding was instituted by Josephine. By her complaint, she alleged that a doubt had arisen as to the meaning of paragraph thirteen of the will of her father, Jacob Franks, because of the death of his son Jack without leaving issue surviving. All other questions raised by the complaint or other pleadings were disposed of before the entry of the decree appealed from, and those questions and issues are not here involved.

The trustees under the will of Jacob Franks were named defendants. They filed an answer and an amended counterclaim, also praying for a construction of the will. The three minor children of Josephine were also made parties to the suit. A guardian *ad litem* was appointed for the

minors, who filed an answer and also has filed a brief in this court. The trustees under the last will and testament of Jack Franks were also named defendants. They filed an answer to the complaint. Upon a hearing, the chancellor entered a decree construing the thirteenth paragraph of the will. From that decree, the trustees under the will of Jack Franks, deceased, perfected the appeal to this court. The title to a freehold estate is involved, which gives us jurisdiction on direct appeal.

Appellants contend that no provision was made in the will for the distribution of either the principal or income of the trust property in case either the daughter, Josephine, or the son, Jack, died without issue. They urge, therefore, that upon the death of the testator, the reversion in the trust property vested as intestate property in Josephine and Jack, as his only heirs-at-law, subject only to be divested by the will in the event they should die leaving issue; that as to the one-half interest in the trust property from which the son Jack was given the income for life, such contingency not having occurred, the title to the reversion in such interest did not pass under the will but passed to the testator's heirs, under the law of descent, and was so held by them at the time of Jack's death. Under this contention, it is argued that upon the death of the son Jack, one half of the principal and income of the trust was carved out of the trust property and is now vested one half in the daughter Josephine, and the other one-half in the estate of the son Jack, as heirs-at-law of their father. Appellants, as trustees under the will of Jack Franks, are only interested in the question whether one half of the trust property from which the net income was bequeathed to Jack for his life, and one half of the income therefrom after his death, became intestate property upon his death without issue. If it did not, they have no interest in the property belonging to the trust estate

created by the will of Jacob Franks, deceased, or in the income from such property.

On the other hand, Josephine contends that under the proper construction of the will, upon the death of the son Jack without issue surviving, the trustees should continue to hold the entire principal of the trust estate, except such portion thereof as may, from time to time, become necessary to pay the legacies to the surviving issue of the deceased annuitants under the twelfth paragraph of the will, and, subject to the payment of the annuities provided in paragraph eleven, the trustees should pay over to her all of the net income from the trust until her death; that upon her death, they should pay over and distribute the entire *corpus* of the trust property to her issue living at that time.

The guardian *ad litem* for the minor children of Josephine agrees with this construction as to the *corpus* of the estate. He contends, however, that the one-half of the net income payable to Jack during his lifetime, accruing after his death, should not be paid to Josephine, but should be accumulated by the trustees, and, upon the death of Josephine, should be distributed, together with the *corpus* of the trust, to her children living at that time. The trustees under the will of Jacob Franks, deceased, only asked the court for directions as to the correct construction of the will and the administration of the trust.

The chancellor adopted the construction contended for by Josephine, and directed the trustees to hold the entire principal or *corpus* of the trust, except such portion thereof as may be necessary from time to time to pay the legacies under paragraph twelve of the will; that they pay all the net income, except such portion thereof as may be necessary to pay the annuities under paragraph eleven of the will, to her until her death, and upon her death, pay and distribute the principal or *corpus* of the trust to her law-

ful issue living at that time. In her brief filed in this court, however, Josephine disclaims any desire or intention to engage in any controversy with her children as to the distribution of the one-half of the net income from the trust property involved, during her lifetime.

There is no disagreement of counsel as to the rules of law applicable to cases involving the construction of wills. They disagree only as to the application of those rules to the language of the will here involved. As has been pertinently observed by this court, while the decisions in other cases may serve to guide the court with respect to general rules concerning the construction of wills, unless the cases examined be, in every respect, directly in point and involve the construction of similar language, they are not controlling, but only persuasive. *Hartwick* v. *Heberling,* 364 Ill. 523.

The purpose of construing a will is to ascertain the intention of the testator expressed in the will. (*Norton* v. *Jordan,* 360 Ill. 419.) It is a cardinal rule to be followed in the construction of wills that the intention of the testator shall be ascertained and given effect, if that can be done without violating some rule of law or public policy, and, if possible, all the language used by the testator must be given effect. *Hayden* v. *McNamee,* 392 Ill. 99; *Richardson* v. *Roney,* 382 Ill. 528; *Condee* v. *Trout,* 379 Ill. 89; *Tucker* v. *Tucker,* 308 Ill. 371.

The law is also well settled that the intention of the testator must be ascertained from a consideration of the entire will, and such construction adopted, if possible, as will uphold and give effect to all the language used by the testator. *Golstein* v. *Handley,* 390 Ill. 118; *Scott* v. *Crumbaugh,* 383 Ill. 144.

The rule is also well settled that there is a presumption against intestacy, in whole or in part. This presumption is so strong that unless a contrary intention is clearly expressed, it will be presumed that the testator intended to

dispose of all of his estate by his will, and leave no part of it as intestate property. The courts will adopt any reasonable construction to avoid a conclusion of intestacy as to a part of the testator's property. (*Suiter* v. *Suiter,* 323 Ill. 519.) The rule is also that in the interpretation and construction of a particular provision in a will, the entire will must be considered and the testator's intention ascertained from a consideration of all the language used, in whatever portion of the will the language may be found. (*Hartwick* v. *Heberling,* 364 Ill. 523; *Johnson* v. *Boland,* 343 Ill. 552; *Drager* v. *McIntosh,* 316 Ill. 460.) With these often-announced and well-settled fundamental rules in mind, we proceed to the consideration of the language of the will here involved.

By the sixth paragraph of the will here under consideration, the testator bequeathed all the rest, residue and remainder of his estate to the trustees. Then, after providing that the trustees set aside property or securities in the sum of $250,000, to be known as the Flora G. Franks Trust, he provided by the tenth paragraph of his will that the trustees set aside all the rest, residue and remainder of his estate to be known as the Josephine Helene and Jack Morris Franks Trust. By paragraph eleven, he then directed the trustees to pay from the net income of the trust, thirteen annuities of $1000 each, per year, to his nephews and nieces named in that paragraph. By paragraph twelve, he directed his trustees, upon the death of each annuitant named in paragraph eleven leaving issue surviving, to pay to such issue from the principal of the trust the sum of $15,000. Then by paragraph thirteen, he directed the distribution of the balance of the net income from the trust, and also the disposition of the *corpus* of the trust, at the termination thereof.

By subparagraph (a) of paragraph thirteen, he first directed the trustees to apply and pay one half of the remaining net income, or so much thereof as they may deem

necessary, to the support, maintenance and education of his daughter Josephine until she reached the age of twenty-one years. He further directed that any balance of the one-half of such net income which was not necessary for her support, maintenance and education, should be accumulated and invested by the trustees. He then provided that when his daughter Josephine reached the age of twenty-one years, all such accumulations from the one-half of the remaining net income not used for her support, maintenance and education should be paid over to her. Thereafter, he directed the trustees to pay over to his daughter Josephine all of the one-half of the remaining net income from the trust during her natural life in quarter-annual installments.

By subparagraph (b) of said paragraph thirteen, he made a like provision for the payment of the other one-half of the remaining net income to his son Jack, this to be used for his support, maintenance and education until he reached the age of twenty-one years; that if any surplus over and above the amount necessary for his support, maintenance and education remained, the same should be accumulated and invested by the trustees, and paid over to him when he reached the age of twenty-one years. Thereafter, he directed that all of the one-half of the remaining net income be paid to him during the term of his natural life in quarterly installments.

Subparagraph (c) of paragraph thirteen of the will provides that upon the death of either the daughter Josephine or the son Jack leaving lawful issue surviving, the trustees shall first set aside from the principal of the trust property an amount sufficient to provide for the payment of the annuities and bequests provided for by paragraphs eleven and twelve of the will. It then directs the trustees to pay over and distribute one half of what remains of the principal of the trust to the lawful issue of such deceased daughter or son. Thereafter, the trust is to continue as

to the funds set aside for the payment of annuities under paragraph eleven, and the bequests under paragraph twelve, and also as to the remaining one-half of the principal of the trust.

Subparagraph (d) of said paragraph thirteen provides that upon the death of the survivor of the daughter, Josephine, and the son, Jack, the trustees shall pay over and distribute to her or his lawful issue surviving, all the remaining property held in trust, except an amount necessary for the payment of the annuities and bequests in the eleventh and twelfth paragraphs of the will. It then provides for the final distribution of the trust property after all the annuities and bequests provided for in paragraphs eleven and twelve have been paid. It provides that if, after all of said annuities and bequests have been paid, any of the property shall remain, one half of such remaining property shall be paid over and distributed to the lawful issue of Josephine then surviving, and the other one-half to the lawful issue of the son Jack then surviving. By this subparagraph, the testator then further provided "or if either my said daughter, Josephine Helene Franks, or my son, Jack Morris Franks, has no issue then surviving, then all of said property shall be paid over and distributed to the lawful issue of the other, then surviving."

Appellants, in support of their contention that in case of the death of either of the life beneficiaries without issue the will made no provision for the disposition of either the one-half interest in the *corpus* of the trust or the income therefrom, cite and rely upon *Tilton* v. *Tilton,* 382 Ill. 426; *Foss* v. *State Bank and Trust Co.* 343 Ill. 94; *Harrison* v. *Weatherby,* 180 Ill. 418; *Kellett* v. *Shepard,* 139 Ill. 433; and *Bates* v. *Gillett,* 132 Ill. 287. Those cases announce the rule that where a testator by his will fails to dispose of all his property or the income therefrom, such property or income as is undisposed of by the will becomes intestate property and vests in the heirs of the

testator upon his death; that when a life estate in property is given by the will with remainder over to the issue of the life tenant, where such life tenant has no issue at the death of the testator, and the will makes no disposition of the reversionary interest in case the life tenant dies without issue, the fee of such interest vests in the heirs of the testator upon his death, subject to be opened up to let in afterborn surviving issue of the life tenant, which will defeat the title of the heirs. And, in case the life tenant dies without issue, the fee to the reversion remains in the heirs of the testator. There can be no controversy as to this rule. Those cases and the rules therein announced, however, are of little aid in the determination of the questions here involved. The decisive question here is not what becomes of intestate property not disposed of by the will. The question is: Did the testator dispose of all his property by his will, or did some of it descend to his heirs-at-law under the laws of descent?

The provisions of the will are such that the disposition of the principal or *corpus* of the trust and the income therefrom must be considered separately. We will first consider the question of what disposition the testator made of the principal or *corpus* of the trust estate. As already observed, in order to determine the proper construction of any provision of a will, all the language of the will must be considered and, if possible, given effect. By subparagraphs (a) and (b) of paragraph thirteen, the testator disposed of the entire income from the trust during the lives of his daughter Josephine and his son Jack, as long as they both should live. By subparagraph (c) of paragraph thirteen, he provided that in case of the death of either leaving issue, after setting aside enough of the trust property to insure the payment of the annuities provided for in paragraph eleven, and the bequests provided for in paragraph twelve, one half of what remained of the principal or *corpus* of the trust should be then distributed to

the issue of such deceased child. This would leave the remaining one-half in the trust, the income therefrom to be paid to the survivor of his two children during her or his life, under subparagraph (a) or (b), depending upon which child survived.

By subparagraph (d) of paragraph thirteen, he provided for the distribution of the balance of the *corpus* or principal of the trust upon the death of the survivor of his two children. When this event occurred, he directed that his trustees should distribute all of the remaining trust property, except the property directed by subparagraph (c) to be held to insure the payment of the annuities under paragraph eleven and the bequests under paragraph twelve, to the lawful issue of such survivor. He further provided that if, after the payment of the annuities under paragraph eleven and the bequests under paragraph twelve, any of the property which had been set aside by the trustees for that purpose remained, the same should be distributed one half to the issue of his daughter Josephine then surviving, and one half to the lawful issue of his son Jack then surviving. He then provided that if either his daughter or his son left no lawful issue surviving, then "all of said property shall be paid over and distributed to the lawful issue of the other then surviving." There are two distributions of the principal of the trust provided for in this subparagraph, one at the death of his surviving child and the other after the annuities and bequests under paragraphs eleven and twelve have all been paid. By the expression in this clause "all of said property," it seems obvious that the testator referred to all of the property which was to be distributed at the death of his surviving child, as well as to any balance remaining of the property set aside by the trustees for the payment of the annuities and bequests under paragraphs eleven and twelve. Of course, he contemplated that his first child dying would leave issue. In that event, he made provision for partial distribution of

the *corpus* of the trust at that time. The contingency that his first child to die would leave no issue was not anticipated. Consequently, no disposition of one half of the *corpus* of the estate, upon the death of his first child in that contingency was made. The result was, that all of the property was to remain in the trust until the death of the survivor. The situation created by this contingency was that there was no provision in the will for the distribution of any part of the trust property until the death of his surviving child.

It seems to us that the intention of the testator which is manifested by the entire will is that if, as to one half of the trust property, the trust had not been terminated under subparagraph (c), the trust should continue as to all of the property until the death of the survivor of his daughter and son; that upon the death of such survivor, all the remaining property should go to the lawful issue of his children then living, and in case either child left no surviving · issue, it should go to the issue of the other then surviving. No one can read the entire will without reaching the conclusion that this was his definite pattern and purpose, expressed in the will. Undoubtedly this was the intention which the testator had in mind, and we think such intention is fairly expressed in the will. As to the principal or *corpus* of the estate, we agree with the construction placed on the will by the chancellor.

The question of the disposition of the one-half of the income which was payable to the son Jack in his lifetime, in the event he should predecease his sister Josephine and leave no issue surviving, presents a different question. A most careful examination of the entire will discloses that the testator made no disposition of that portion of the income, in the event such contingency occurred.

However strong may be the presumption against partial intestacy, when a testator has overlooked a condition or has failed to provide for a contingency which he probably

would have provided for had he thought of it, the court cannot speculate or guess as to what provision he would have made had he not overlooked it. In *Hampton* v. *Dill,* 354 Ill. 415, it was said: "His intention must be determined by the language of the will itself and not from any surmise that he used the language to express an intention or meaning he had in his mind which he failed to express. If he has overlooked a condition which he probably would have provided against had he thought of it, the court cannot guess which provision he would have made and read it into his will on the presumption that he would naturally have made such a provision if he had thought of it."

In *Scott* v. *Crumbaugh,* 383 Ill. 144, we said: "In *Moeller* v. *Moeller,* 281 Ill. 397, it was said that where a testator in disposing of his property overlooks a particular event, which, had it occurred to him, he would, in all probability, have provided against, the court will not supply a provision by intendment, on the presumption of what the testator naturally would have done, citing *Illinois Land and Loan Co.* v. *Bonner,* 75 Ill. 315, and *Huffman* v. *Young,* 170 Ill. 290."

In *Foss* v. *State Bank and Trust Co.* 343 Ill. 94, we said: "While it is true that the presumption is always against intestacy, either in whole or in part, where a party has attempted to dispose of property by will, this is only a presumption and does not warrant this court, under the guise of construing a will, to add provisions which are offered in place of those omitted. Such presumptions cannot be indulged in either to overcome express language in a will [citation,] or to supply an omission made by oversight, where no language is used to show an intention on the part of testator to dispose of the property. [Citations.] If a testator has overlooked a condition which he would perhaps have provided for if it had occurred to him, the court can not guess at what provision he would probably have made and by construction read it into his will on

the presumption that he would naturally have made such a provision if he had thought of it."

The rule is that where, by the terms of the will, the income is to be paid to two or more beneficiaries for life, and it is provided that on the death of the survivor the trust shall terminate and the principal shall be distributed to designated persons, but there is no provision as to the disposition of the income payable to a life beneficiary in the event of his death prior to the time fixed for the termination of the trust, the disposition of such income depends upon the intention of the testator, expressed in his will. In such cases there are four possible dispositions which might be made of such share of the income. First, it might be paid to the surviving life beneficiary; second, it might be paid to the estate of the deceased beneficiary; third, it might be paid to the heirs of the testator as property not disposed of by his will; and, fourth, it might be accumulated by the trustees, and on the termination of the trust, paid to the persons entitled to the principal of the trust estate at that time. (Scott on Trusts, Vol. I, sec. 143, p. 718). Which of these four alternatives shall be applied depends upon the intention of the testator, expressed in the will. *Clarke* v. *Rathbone,* 221 Mass. 574, 109 N. E. 651; *Meserve* v. *Haak,* 191 Mass. 220, 77 N. E. 377.

Before it can be paid to the surviving life beneficiary, such an intention of the testator must be found in the will. We find no language in the will indicating an intention of the testator that, upon the death of one of the life beneficiaries without issue, the one-half of the net income to which such deceased beneficiary would have been entitled, if living, should be paid to the surviving life beneficiary. The income was not given to them either in joint tenancy or as a class. Each was specifically given one half of the income during her or his life. There is no language in the will which would warrant the conclusion that in the case of the death of one of the life beneficiaries without

issue, the survivor should receive the entire net income for the life of such survivor. We cannot, therefore, adopt or apply the first of the above alternatives.

Nor do we believe that anyone would seriously contend that the second of the alternatives can be applied. There is no language in the will to justify it. If, by the terms of the trust, the interest of the beneficiary terminates on his death, there is no devolution of his interest upon his death. (Restatement of the Law of Trusts, Vol. I, sec. 142, p. 353.) Under the above rule, unless the testator has directed that the income shall be accumulated, and unless such a direction is valid, the trustees are not authorized to accumulate the income, and it must be disposed of in one of the other ways above mentioned. (Scott on Trusts, Vol. 1, sec. 143, p. 719.) The will here involved made no such direction. This eliminates one, two and four, and leaves for consideration only the third alternative.

A like question was presented to this court in *Routt* v. *Newman*, 253 Ill. 185. On the facts, that case is strikingly similar to this case. There, the testatrix, by her will, devised her estate in trust. She directed that the trust continue until the death of her last surviving son, and that the net income therefrom be paid to her four sons, one fourth to each. She further provided that upon the death of any or either of the four sons during the term of the trust leaving a child or children, his share of the income should be paid to such child or children of the deceased son, during the continuance of the trust. She further provided that in case either of the sons died leaving no child or children surviving, then one half of his share should go to the surviving widow of such deceased son during the continuance of the trust, and the remaining one-half should be paid to the surviving life beneficiaries during that time. One of the sons died leaving no child or widow. One of them died leaving a widow and no children. The third son died leaving a widow and one child. Under the

will, this grandchild succeeded his father as beneficiary, and was entitled to his share of the income until the termination of the trust. Thereafter, the child of this deceased life beneficiary died without issue. The question presented was the disposition to be made of the portion of the income payable to the child of the deceased beneficiary, upon the death of such child, during the continuance of the trust. The terms of the will were identical in effect with the terms of the will here under consideration, except the contingency involved was the death of the grandchild, who was the second taker. It was held that the portion of the income which the grandchild was receiving at the time of his death, not having been disposed of by the testatrix beyond the lifetime of such grandchild, was intestate property which descended to the heirs of the testatrix.

No other conclusion can be reached in this case without the court supplying provisions in the will which the testator did not include therein. This, the court cannot do. The remainder in the one-half of the net income from the trust property bequeathed to the son Jack for his life, upon the death of the testator became intestate property, subject only to the contingency that the life beneficiary die leaving issue surviving. This contingency did not occur. The testator made no provision for the disposition of his son's share of such net income beyond the life of the son. It, therefore, became intestate property and, subject to the contingency that his son Jack leave issue surviving, at the death of the testator descended to his daughter and his son, as his heirs-at-law, one half to each. It is clear that the testator, in his own mind, intended to dispose of all his property by his will, and leave none of it as intestate property. There is no doubt that he thought he had done so. However, he failed, by his will, to dispose of the one-half of the income beyond the life of the son, in case the son should die without issue. Whatever intention he may have had in mind cannot be given effect for the reason that

such intention was not expressed in his will. It follows that upon the death of the testator one half of the net income from the trust not disposed of beyond the life of his son Jack became intestate property and vested in the heirs of the testator, subject to be divested by the death of the son leaving issue surviving. This contingency did not occur. Upon the death of the son without issue, the one-half of the income was vested in Josephine and the estate of the deceased son, share and share alike.

The decree should have directed the trustees to pay one fourth of the net income from the trust, accruing subsequent to the death of the son Jack, to his estate, and the remaining three fourths to the daughter Josephine.

The decree is reversed and the cause is remanded with directions to enter a decree in accordance with the views herein expressed.

*Reversed and remanded, with directions.*