Leo Boldenweck and Spencer R. Keare, Executors of Will of Blanche C. Haugan, Deceased, Appellants and Cross-Appellees, v. City National Bank and Trust Company of Chicago and Walter J. Cox, Trustees under Will of Henry A. Haugan et al., Appellees and Cross-Appellees.
American National Bank and Trust Company of Chicago, as Executor of Will of Julia H. Grosvenor, Deceased, et al., Appellees and Cross-Appellants.

Gen. No. 45,246.

Opinion filed June 13, 1951. Released for publication July 30, 1951.

ISHAM, LINCOLN & BEALE, BUTZ, VON AMMON & MARX, and CASTLE, BRINTLINGER & CAREY, all of Chicago, for appellants and cross-appellees; CHARLES D. ALBRIGHT, RODNEY C. GLOVER, HOWARD R. BRINTLINGER, and DEAN A. ESLING, all of Chicago, of counsel.

POPPENHUSEN, JOHNSTON, THOMPSON & RAYMOND, and MUSGRAVE, EWINS, PRICE & NOTZ, all of Chicago, for certain appellees and cross-appellants; ANAN RAYMOND, JOHN K. NOTZ, and CHARLES O'LAUGHLIN, all of Chicago, of counsel.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

On October 22, 1928, Henry A. Haugan of Chicago, Illinois, made his last will and testament. He died November 30, 1928, leaving him surviving his widow Blanche Caroline Haugan, his son Henry Alexander Haugan, his sister Julia H. Grosvenor, and his three brothers, Charles M., John Richard and Oscar H. Haugan. The will was admitted to probate in the probate court of Cook county on January 21, 1929, and letters testamentary were issued. Distribution was made by the executors to the trustees of the trust established by the will. Charles M. Haugan died November 11, 1934, leaving him surviving his widow Carolyn B. Haugan, and his children, Charles M. Haugan, Jacqueline H. Konysky, Patricia H. Rust, Nancy H. Rich, Dorothea H. Skonberg and Carolyn H. Cushman, all of whom survive. John Richard Haugan died

December 1, 1941, leaving him surviving his widow Grace Kleist Haugan, and his children, Laura Marie Haugan and John Richard Haugan, all of whom survive. Oscar Haugan died October 6, 1943, leaving him surviving his widow Clara J. Haugan, and his children, Jevne Haugan, Richard O. Haugan and Helen H. Clement, all of whom survive. The testator's sister, Julia Haugan Grosvenor, died May 1, 1949, leaving her surviving her children, Laura G. Millikan, Josephine G. Gonsolus, Jane McNurlen and Julia G. Goodnight, all of whom survive. The American National Bank and Trust Company of Chicago was appointed and qualified as executor of her last will and testament. Henry Alexander Haugan, testator's only child, died February 1, 1939, without wife or descendants. His mother and the widow of testator, Blanche Caroline Haugan, died May 21, 1948. Leo Boldenweck and Spencer R. Keare, executors of the will of Blanche C. Haugan, deceased, filed their amended complaint in equity in the circuit court of Cook county for the purpose of enforcing their alleged claim to the corpus of the estate of Henry A. Haugan, deceased, and for the construction of his will, against the trustees of the will of Henry A. Haugan, deceased, and the children of the deceased's sister and brothers of testator, other interested persons and the widows of the three brothers. Among the assets of Blanche C. Haugan, widow of testator, is her distributive share or shares, if any, in the trust estate or estates created in and by the last will of Henry A. Haugan, deceased. A decree was entered determining that under the proper construction of Henry A. Haugan's will the property remaining in trust upon the death of his widow on May 21, 1948, vested on that date in those persons who would have been the testator's heirs at law had he died immediately after his wife. Plaintiffs, appealing, contend that the construction placed on the will of Henry

573

A. Haugan is erroneous and that the decree should have been entered in their favor. Defendants, who also filed a counterclaim, ask that the decree be modified so as to eliminate any provision for allowing plaintiffs "reasonable attorneys' fees and expenses payable from the estate," and that as modified the decree be affirmed.

The following language from the third and fourth articles of the will of Henry A. Haugan, deceased, are relevant to the contentions in the instant case:

"Third: After the payment of my just debts and the bequest provided for in the preceding paragraph, I give, devise and bequeath the entire residue and remainder of my property, of whatsoever kind and wheresoever situated, whether real, personal or mixed, to my trustees hereinafter named, upon the following trust:

"(b) My said trustees shall divide the entire trust estate into (2) parts. One of said parts shall be equal to two-thirds (2/3) of the value of the entire trust estate and shall be known as Trust Number One, which said Trust Number One is created primarily for the use and benefit of my wife, Blanche Caroline Haugan. The remaining part of said trust estate, equal to one third (1/3) of the value of the entire trust estate, shall be known as Trust Number Two, and is created primarily for the use and benefit of my son, Henry Alexander Haugan. My said wife shall be paid the entire net income from Trust Number One every three (3) months dating from the date of my death, so long as she shall live. She shall also be paid the entire net income from Trust Number Two until my said son shall arrive at the age of twenty-five (25) years, if he has not arrived at said age prior to my death, and my said wife shall devote the said net income to the support and use of herself and to the support, use and care of my said son.

574

"(c) Upon the death of my said wife, Blanche Caroline Haugan, the entire net income from said Trust Number One shall be paid to my said son, Henry Alexander Haugan, if he shall survive my said wife, until he attains the age of thirty (30) years, at which time one-third (1/3) of the principal of said Trust Number One shall be paid and delivered over to him in absolute ownership, and the net income of the remaining two-thirds (2/3) of the said Trust Number One shall be paid to him during the remaining years of his life. But if at the time of the death of my said wife my said son shall not have attained the age of thirty (30) years, then said one-third of the principal of said Trust Number One shall be delivered to my said son when he shall attain said age. Should my said son not have attained the age of twenty-five (25) years at the time of the death of my said wife, my said trustees, dating from the date of my death or from the date of my wife's death, as the case may be, shall pay to my said son from the net income of said trust estate or trust estates, the sum of Five Hundred ($500.00) per month, until he shall attain the age of twenty-five (25) years. Upon the death of my said son leaving lawful descendants him surviving, the entire income of said Trust Number One then in the hands of my said trustees shall be paid for a period of twenty-one (21) years from the date of the death of my said son, or in case my said wife shall survive him then for a period of twenty-one (21) years from the date of her death, to his lawful descendants per stirpes for a period of twenty-one (21) years, at the end of which time the entire trust estate with all accumulated income shall vest in and be distributed to said lawful descendants of my said son on a per stirpes and not per capita basis. Should he leave no lawful descendants or should all of his lawful descendants (if any) die before the expiration of said twenty-one (21) years, then and in either

575

such event the said trust estate shall vest in and be paid and delivered over to my then living heirs at law.

"(d) My said son, Henry Alexander Haugan, when he attains the age of twenty-five (25) years, as aforesaid, shall be paid the entire net income from Trust Number Two until he attains the age of thirty (30) years, at which time there shall be paid and delivered over to him in absolute ownership one third (1/3) of the principal and any accumulated net income on hand in said Trust Number Two, after which time and during the remaining years of his life he shall be paid the entire net income from the remainder of said trust. Should my said son, Henry Alexander Haugan, depart this life before me or after me leaving lawful descendants him surviving, then and in either such event the entire net income of said Trust Number Two shall be paid to such lawful descendants per stirpes and not per capita, for a period of twenty-one (21) years from the date of the death of my said son, or from the date of my death in case he predeceases me, at the end of which time said entire trust estate with all accumulations thereon shall vest in his then living lawful descendants, and distribution shall be made to said respective lawful descendants of my said son on a per stirpes and not a per capita basis. Should he leave no lawful descendants him surviving but leave a widow surviving him, then the entire net income from said Trust Number Two shall be paid to his surviving wife so long as she shall live and at her death the remainder of said Trust Number Two shall vest in and I give, devise and bequeath the same to my then living heirs at law, division and distribution in all such cases to be per stirpes and not per capita. Upon the death of the wife of my said son or upon my said son's death, if he shall have left no lawful descendants him surviving, then the entire net income from said Trust Number Two shall be paid to my said wife, Blanche Caroline Haugan so

long as she shall live. Upon the death of the survivor of the wife of my said son and of my wife, Blanche Caroline Haugan, as the case may be, then the remainder of said Trust Number Two shall vest in my then living heirs at law as aforesaid. In the event of the death of my said son leaving neither a widow nor lawful descendants him surviving, then from and after the date of his death, in the event my said wife, Blanche Caroline Haugan, shall survive him she shall be paid the entire net income from said Trust Number Two so long as she shall live and at her death, or in case she has predeceased my said son then at his death, the entire balance, both principal and income, remaining in the hands of my said Trustees from said Trust Number Two shall vest in and I give, devise and bequeath the same to my then living heirs at law. Division and distribution in all such cases shall be per stirpes and not per capita. Heirship for the purposes of this, my Last Will and Testament, shall in every instance be determined by the Statutes of Descent of the State of Illinois as in force at the time of my death.

"Fourth: Should the wife of my said son not have been a person in being at the time of my death, then the net income hereinabove provided to be paid to the wife of my said son from said Trust Number Two shall only be paid to her for a period of twenty-one (21) years from and after the date of my death, at the end of which time, if she be then living, one-third (1/3) of the corpus of said Trust Number Two then in the hands of the Trustees shall be paid and delivered to her in absolute ownership if she shall not have remarried and the net income on said trust estate shall thenceforth be paid out and distributed to my said wife, Blanche Caroline Haugan, if she shall then be living, for the remainder of her life, and at her death or should she not be living, then at the expiration of said Twenty-one (21) years the balance of said Trust

577

Number Two shall vest in and be distributed to my then living heirs at law per stirpes."

Plaintiffs maintain that any contingent remainders limited to the "then living heirs at law" of the testator, to take effect upon the death of the testator's widow, Blanche Caroline Haugan, failed because no members of that class existed at the time provided, and that as a result a reversionary interest, after the life estates of the son and widow, was in Blanche Caroline Haugan at the time of her death. Plaintiffs say that in construing the phrase "then living heirs at law," the word "heirs" by itself connotes those persons ascertained at testator's death, designated by law to succeed to decedent's estate; that the words "then living" are words of survivorship and the entire phrase "then living heirs at law" mean those members of the class who are the heirs at testator's death and who survive to the time of vesting; and that the heirs of testator at his death were Blanche Caroline Haugan and the son, Henry Alexander Haugan, and that when the son died intestate his only heir was his mother, Blanche Caroline Haugan, who thereupon became vested with the whole reversion. Plaintiffs insist that under the will and as a result of a sequence of events after testator's death, the gift over in remainder insofar as it is to be construed as a gift to testator's heirs to take effect at the death of Blanche Caroline Haugan, must be held to be a gift to those then surviving of the testator's heirs determined as a class at the date of his death, and there being no such members of the class living at the death of the widow, the remainder failed to take effect, leaving a reversion in the testator's heirs which passed under the will of the widow, Blanche C. Haugan.

Defendants assert that the testator, by Article Third (b), (c) and (d) and Fourth, clearly intended under

the contingencies which occurred to vest the remainder interests under both trusts in his heirs at law as a class to be determined and whose members were to be identified, at the termination of the prior life estates.

The purpose of construing a will is to ascertain the intention of the testator expressed in a will. It is a cardinal rule to be followed in the construction of wills that the intention of the testator shall be ascertained and given effect, if that can be done without violating some rule of law or public policy, and, if possible, all the language used by the testator must be given effect. The entire will must be considered and the testator's intention ascertained from a consideration of all the language used in whatever portion of the will the language may be found. *Glaser v. Chicago Title & Trust Co.,* 393 Ill. 447. No technical rule of construction should be permitted to interfere with ascertaining testator's real intention. The law does not limit the testator to a single sentence in expressing his intention in regard to the disposition of his estate or any part of it. *Bender v. Bender,* 292 Ill. 358. Examining the will in the light of the circumstances existing at the time it was drawn, we note that the testator had a wife, and only son, a sister and three brothers. We are of the opinion that the testator took into account his own kin and the possibility that at his wife's death and the death of his son without descendants, his estate would pass in accordance with the remainders set forth in his will. When he followed a detailed testamentary plan, specifically providing for his wife, son, son's wife and son's descendants, and then on the termination or failure of those specific limitations, made a limitation over to "my then living heirs at law," he thereby referred to the defendants, the only persons in existence of his own blood at the termination or failure of the prior interests.

In the testamentary plans, Trusts Numbers One and Two are basically similar, the main difference being that the income from Trust Number One was to go to his wife, and that from Trust Number Two to his son during their respective lifetimes. In addition, the disposition of the remainder of Trust Number Two was complicated by the desire of the testator to provide for the surviving wife of Henry Alexander Haugan, should he have one, a contingency which did not occur. In a general way the testator intended that the income from Trust Number One should go to the son if he should survive his mother, and after they had both died the income should go to his descendants for a period of 21 years, dating from the date of his death, if she should survive him, or from his death if he should survive her, and at the end of the period the remainder was to vest in those descendants. The disposition of the remainder interests in the event the son should have no descendants, which actually occurred, is what is in dispute in this case.

Under Trust Number One the testator provided in Article Third (b) of his will that his wife should have the income therefrom during her lifetime. Article Third (c) disposes of the remainder interest in Trust Number One after the termination of the life estate given to the wife. It commences with the language "Upon the death of my said wife, Caroline Blanche Haugan," and provides that the income *after* her death shall be paid to the son "if he shall survive my said wife" until he attains the age of 30 years, when one-third of the corpus of that trust was to be given to him just as he was to receive one-third of the corpus of Trust Number Two. The instrument provides that the income shall be paid to the son's lawful descendants for a period of 21 years, dating from the date of his death, or, in the event Blanche C. Haugan should survive him, then dating from the date of her death, with

580

the corpus vesting in the descendants at the end of that time. The next sentence answers the question what is to happen should Henry Alexander Haugan die without descendants, or should the descendants die within the 21-year period. It reads: "Should he leave no lawful descendants or should all of his lawful descendants (if any) die before the expiration of said twenty-one (21) years, then and in either such events the said trust estate shall vest in and be paid and delivered over to my then living heirs at law." Since the son died without descendants, the conditions for the vesting of the remainder of Trust Number One in the testator's "then living heirs at law" had occurred. In determining the persons eligible to receive the remainder, two problems are presented: (a) when, in point of time, did the remainder vest, and (b) in whom did the remainder vest when it did vest? It will be observed that the sentence in Article Third (c) of the will contains two "thens." The first appears in the phrase "then and in either such events" and the second in the phrase "in my then living heirs at law." The first "then" does not aid in solving the problem as to when the remainder vested because it is not used as an adverb of time, but as a conjunction used as a word of reasoning. *Himmel v. Himmel*, 294 Ill. 557; *People v. Camp*, 286 Ill. 511.

The second "then" is found in the following context: "shall vest in and be paid and delivered to my then living heirs at law." The import of these words is that the vesting, paying and delivering and the determination of the class of "then living heirs at law" shall take place at the same time. The word "then" as used in the will is an adverb of time and refers to the events immediately preceding the word, namely, the vesting, paying and delivering. It contemplates the formation of a class at the time of the vesting, paying and delivering of the trust, composed of the persons who would

be the testator's heirs at law at that time. The reference by the testator to the statutes of descent "as in force at the time of my death" shows that he intended that the remainder should go to a class of heirs determined at a time other than the date of his death. If "heirs" were used to mean "right heirs" then the statutes in force at the time of his death would be determinative as a matter of law, and such a reference would be unnecessary. He contemplated that the class of heirs would be determined as of a future date and further contemplated the possibility that the statute would be changed in the interim. To guard against the possibility that he might not approve of the change, he provided that the statutes in force at the time of his death should govern.

██ To answer the question as to when, in point of time, the remainder vested, the two last sentences of Article Third (c) should be examined together. The next to the last sentence provided that if Henry Alexander Haugan dies with descendants, the remainder shall be paid to those descendants after the income has been paid to them for a period of 21 years "from the date of the death of my said son, or in case my said wife shall survive him then . . . from the date of her death." Henry Alexander Haugan died without descendants. The final sentence of Article Third (c) provides that should he leave no lawful descendants, the trust estate shall vest in "my then living heirs." The testator contemplated that in that situation the remainder should vest at the son's death, or in case his wife should survive him, then at her death. In construing class gifts, a rule of construction used in ascertaining membership in the class is that when a prior estate is created and after the termination thereof the remainder is given to a class, determination of the class and identification of its members must await the termination of the prior estate. *Way v. Geiss,* 280 Ill.

152; *Dime Savings & Trust Co. v. Watson*, 254 Ill. 419. In the instant case the prior estate was given to Blanche C. Haugan during her lifetime and the class to take the remainder was to be determined at her death. We are of the opinion that the testator contemplated what actually occurred and provided for the contingency which happened, that is, the death of his son before his wife.

■ The plan of Trust Number Two is essentially similar to that of Trust Number One. The testator provided in Article Third (d) that his son should be paid the entire net income until he attained the age of 30 years, if, at the time of the testator's death, the son had attained the age of 25 years. At the age of 30 years, the will provided there should be paid and delivered over to the son one-third of the principal. Thereafter he was to receive the income from Trust Number Two during the rest of his life. Next, provision is made for the contingency of the son dying, first with descendants and secondly without descendants. The contingency of dying without descendants is subdivided as to dying without descendants (a) leaving a widow surviving him, and (b) leaving no widow surviving him. After the provisions in favor of his surviving wife, there follows the provisions herein material:

"Upon the death of the survivor of the wife of my said son and of my wife, Blanche Caroline Haugan, as the case may be, then the remainder of said Trust Number Two shall vest in my then living heirs at law as aforesaid. In the event of the death of my said son leaving neither a widow nor lawful descendants him surviving, then from and after the date of his death, in the event my said wife, Blanche Caroline Haugan, shall survive him, she shall be paid the entire net income from said Trust Number Two so long as she shall

live and at her death, or in case she has predeceased my said son then at his death, the entire balance, both principal and income, remaining in the hands of my said Trustees from said Trust Number Two shall vest in and I give, devise and bequeath the same to my then living heirs at law."

The condition for the vesting of the remainder in the "then living heirs at law," i.e., the death of the son leaving neither a widow nor lawful descendants him surviving, has occurred. The testator contemplated that the remainder should vest at the time of the death of the survivor of his widow and son in the contingency which occurred, the same conclusion reached in analyzing Article Third (c). As shown in the discussion relative to Article Third (c), the quoted language from Article Third (d) contemplated the formation of a class of persons who should succeed to the remainder interest in both trusts under the contingencies which occurred. In *Brumsey v. Brumsey*, 351 Ill. 414, the court held that the phrase "then living heirs at law" contemplated the determination of a group of heirs at law at some time other than at the date of the death of the testator.

In their second point plaintiffs say that only two constructions are possible with respect to the contingent remainder under Trust Number One; that either testator intended it to vest upon the death of his son after the death of his wife, which did not occur and hence the remainder failed and there was a reversion as to this trust in Blanche C. Haugan at the time of her death, or the testator intended to vest the remainder in his "then living heirs at law" upon the death of his son, which occurred in 1939, in which event the reversion was in Blanche C. Haugan at the time of her death. Plaintiffs point out that Article Third (c) addresses itself to events following the death of Blanche

584

C. Haugan; that in the next to the last sentence testator makes provision for the descendants of his son, upon the son's death; and that in the last sentence, referring to the son's death, provides "should he leave no lawful descendants or should all of his lawful descendants (if any) die before the expiration of said twenty-one (21) years, then in either such events the said trust estate shall vest in and be paid and delivered over to my then living heirs at law." They point out further that considering the tenor of the whole paragraph, the testator contemplated the death of his son after his wife; that the son died before his mother; and that if the language be construed to mean that the contingency depended upon the death of the son after his mother, the result is that the gift overfailed and a reversion as to Trust Number One in the testator's heirs existed which was in Blanche C. Haugan at her death. Plaintiffs say, and defendants agree, that where a testator makes a will with detailed provisions for the devolution of his estate, there is a presumption that he did not intend to die partially intestate; that nevertheless, it is not unusual for a testator to provide for contingent remainders that fail to take effect, resulting in partial intestacy; that where a contingent remainder fails for any reason the reversion is in those who are testator's heirs at the time of his death; and that such reversion is indestructible and alienable. *Glaser v. Chicago Title & Trust Co.*, 393 Ill. 447.

██ It is probable that the testator both hoped and anticipated that he would have grandchildren living at the time of the death of his son. He spelled out contingent remainders, providing for this anticipation. Had there been such a living generation of descendants at the time of the death of the survivor of his widow and son, then, in such event, the net income from Trust Number One was to be paid to such descendants for a period of 21 years, and only at the end of such period

585

could the persons in whom the trust would vest be determined. Haugan's son, however, did not have descendants. It cannot be said that the remainder failed because one of the various contingencies for which the testator provided occurred. The testator provided that upon the death of his wife, should his son have died under various alternative situations, including death without descendants, or should all the descendants die before the expiration of the 21-year period, "then and in either such events the said trust estate shall vest in and be paid and delivered over to my then living heirs at law." Under Trust Number One the son could have no possible interest unless he survived the primary beneficiary. He was to take only "upon the death of my wife" and "if he shall survive my said wife." The son's descendants were to take only if they survived the period of 21 years from the death of the last survivor of the widow and son. The determination of the class of heirs can only be made after the termination of the antecedent life estates. The will as a whole disclosed that it was the testator's purpose to provide a life estate at most in his wife, a life estate plus sundry gifts to his son, contingent remainders in his grandchildren and other possible issue of his son, with an income for the son's widow, and finally, upon the termination of the life estate in the widow (following the death of the son without issue or relict) that the trust estate should vest in and be paid over to his then living heirs at law.

Plaintiffs urge that unless the remainder as to Trust Number One failed, leaving a reversion in the testator's heirs at the time of his death, such remainder vested upon the death of the testator's son in 1939 in Blanche C. Haugan. They say that the word "then" in the phrase "my then living heirs at law" in Article Third (c) is an adverb of time and refers to the date of the son's death, since the other event pro-

586

vided for contemplated descendants surviving the son, and the son left neither wife nor descendants at his death in 1939, and that the language used is equivalent of saying that "upon the death of my son leaving no lawful descendants him surviving, then and in that event the trust estate shall vest in my then living heirs at law." They say further that by the express provision of the will the "then living heirs at law" of the testator are to be determined by the statutes of descent of Illinois in force at testator's death; that it is immaterial whether the "then living heirs at law" means those surviving of the class who were testator's heirs at his death, or those who would be the heirs of testator had he died immediately after his son; that in either case the sole heir was Blanche C. Haugan; that the heirs of the testator at his death were his widow and his son; that his widow was the sole survivor of this class upon the death of her son; that the trust property at the time of testator's death was personal property; and that under the statutes of descent of Illinois in force at testator's death, Blanche C. Haugan filled the description of the sole heir of the testator. Plaintiffs aver that the fact that Blanche C. Haugan was an income beneficiary under her husband's will furnishes no basis for excluding her from the determination of heirship on the death of the testator's son. In *Gridley v. Gridley*, 399 Ill. 215, the court said that it is neither inconsistent nor absurd for a testator to give a life tenant an interest in fee in remainder.

██ We agree with defendants that the interest of the widow in Trust Number One was a life estate. As stated, Trust Number One was created primarily for the use and benefit of testator's wife. It provided that her interest ceases "upon the death of my said wife." The will contains no intimation of any intent on the part of testator that his wife should have any estate larger than a life estate. The death of the son, with

587

or without descendants, could serve neither to enlarge nor to decrease her life estate. This estate terminated only at her death, and only at that time, should the son leave no lawful descendants, could the class in which the remainder vested be determined. Under the language of the will, Blanche C. Haugan cannot be included in a class which is for the first time to be determined at the instance of her death. The testator could not have intended that his widow, who would be in fact then not living, should be included in a class of legatees described as "then living heirs." We find that under the circumstances presented, Blanche C. Haugan was not included within the term "heir" whether testator used it in its technical or popular or colloquial sense.

Plaintiffs maintain that the testator's attempted limitation of a remainder in both trusts to his own heirs is void as a matter of law and confirmed a reversion which descended to his heirs at law, Blanche C. Haugan and Henry Alexander Haugan, and that by reason of the death intestate of Henry Alexander Haugan in 1939, leaving Blanche C. Haugan as his sole heir at law, and by reason of the death testate of Blanche C. Haugan in 1948, the reversion in fee has now ripened into possession and vested in the executors of the last will of Blanche C. Haugan. Plaintiffs say that the rule has been well established in this State that where one attempts to create remainders in favor of his heirs, such remainders are void and ineffective and give rise to a reversion in favor of his heirs under the statute of descent, separate and apart from his will. The rule was stated in *Pilus v. Milford,* 1 Vent. 372, (1674), as follows: "A man cannot, either by conveyance at the common law, by limitation of uses or devises, make his right heir a purchaser." See *Corwin v. Rheims,* 390 Ill. 205, 224. Under this point plaintiffs tacitly admit that it was the purpose of the testator to give the remainder of his estate (should his son die

without issue) to his own heirs rather than to the heirs of his wife. They say that this purpose must be defeated because of a "positive rule of common law that a man cannot limit a remainder to his own heirs." We have read the cases cited. The rule on which plaintiffs rely is known in this State as "worthier title," and is to the effect that if a devise to the heirs at law gives precisely the same estate that the heirs would take by descent, then they take by descent and the devise is void. In *McNeilly v. Wylie*, 389 Ill. 391, the court said (393):

"The purpose for the application of the doctrine of worthier title at common law finds no support in our law. It had its origin under the feudal system, where land was held under a tenure from which flowed benefits in favor of the overlord. Among such benefits were those of wardship and relief which would not be available if the grantor's title were passed to his heirs under an *inter vivos* conveyance. In order to preserve those benefits a rule was developed that no alienation *inter vivos* could be effected to the heirs of the grantor. Therefore, the title that heirs could take from their ancestor could only be taken by inheritance. A title thus acquired was considered a 'worthier title.' (Burby on Real Property, p. 459.) It was abolished by statute in England in 1833 but is often applied in this country more as a rule of construction.

"The rule in this State is that a devise which gives precisely the same estate and interest in property as the devisee would take by descent, if the devise had not been made, is inoperative to pass the title, for the reason that a title by descent is regarded as a worthier or better title than one obtained by devise or purchase. [Citing cases.] But this rule is not applicable where there is a difference in kind or quality of the estate or property to be passed under the devise from that which

589

would descend under the statute. If there is a difference in either the amount or quality of the interest taken, the rule is not applicable.''

Where a testator makes a gift of a remainder to a class described as his ''heirs at law,'' and either the gift or the class is in any way different from what it might have been had the class been determined as of the date of testator's death, as in the case at bar, such class of heirs takes by purchase, and the gift is valid. There is no positive rule of law or rule of property in this State that a person cannot by his will limit his remainder to his own heirs. The law is that if a testator used the word ''heirs'' or ''heirs at law'' in a secondary sense to designate those who are to be his heirs at a subsequent time, rather than in the technical meaning to designate persons who would succeed immediately in case of intestacy, his intention in that respect will be sustained. When the remainder is limited not to the heirs who would take immediately on testator's death if he had died intestate, but to a class of heirs to be identified at a subsequent period and after the happening of other contingencies, no rule against limitations to heirs can apply to the devise because the devisees do not thereby get the same estate as would pass to them under the statute of descent. *McCormick v. Sanford,* 318 Ill. 544; *McNeilly v. Wylie,* 389 Ill. 391; *Brumsey v. Brumsey,* 351 Ill. 414. The rule upon which plaintiffs rely applies only to limitations of remainders to right heirs. Manifestly, the rule cannot apply where from the will, as a whole, it appears that the testator used the word ''heirs'' in a sense other than right heirs.

The chancellor entered a decree adverse to plaintiffs, finding the equities in the cause with the defendants, that they are entitled to receive the entire trust estate, and ordering the trustees to pay and deliver the entire trust estate to them. The court found

590

that "a controversy exists as to the construction of the will . . . and that this court should construe the said will"; decreed that the construction of the will argued for by plaintiffs be denied and that there be allowed to plaintiffs reasonable attorney's fees and expenses, payable from the corpus of the trust estates for services rendered in the cause in connection with the construction or interpretation of the will. From these portions of the findings and decree, being paragraph 8 of the findings and paragraphs 1 and 5 of the decretal clause, defendants appeal. Defendants claim that the meaning of the will being plain, no ambiguity having been claimed and no construction being sought or necessary, the case is not a will construction case but an adversary proceeding between two sets of opposing claimants to a fund; that plaintiffs' efforts were not in aid of the trust or of the court but entirely in their own behalf in an attempt to obtain the estate for themselves; and that under the circumstances the sincerity of their belief that they could recover the estate is immaterial. Plaintiffs reply that the pleadings raise questions of interpretation of the will; that their prayer for relief requests the aid of the court in this respect; that the answer of the trustees, upon whom devolves the duty of distributing the trust property to the proper persons, urges that the court should construe the will for its guidance; and that the chancellor found it necessary to construe the will in question rather than dismiss the complaint for want of equity and proceeded to construe the will. The parties are in agreement that when it becomes necessary or advisable to institute a suit in chancery for the construction of a will reasonable solicitors' fees should be allowed. In *Guerin v. Guerin,* 270 Ill. 239, the court said (250):

"It is the settled law in this State that where a will the costs and expenses of the proceeding to construe, is so ambiguous or uncertain as to require construction,

including reasonable fees for complainant's solicitors, should be taxed against and paid by the estate.''

See also *McCormick v. Hall,* 337 Ill. 233; *Dean v. Northern Trust Co.,* 266 Ill. 205. In *Bartlett v. Mutual Life Insurance Co.,* 358 Ill. 452, the court said (457):

''The allowance of solicitors' fees is only proper when the construction of a will is necessary. (*Schneller v. Schneller,* 356 Ill. 89; *McCormick v. Hall,* 337 id. 232; *Brumsey v. Brumsey,* 351 id. 414.) Where a bill is not filed to obtain a construction or direction relating to any provision of the will or to aid in any way in determining its effect but only to enforce a supposed interest of the complainant by a construction which would give him property, the fees of the complainant's solicitor should not be allowed by the court. (*Power v. Power,* 296 Ill. 611.)''

We have indicated that the meaning of the will is plain from the testator's language, reading the will as a whole in the light of surrounding circumstances. We are of the opinion that the case is on the same footing as any other adversary proceeding between two litigants over a fund or *res,* with the holder joined as a party in order to make judgment or decree binding upon him. The general rule is that in such a case attorneys' fees will not be allowed from the fund merely because its holder is in court and the decree directs its payment or distribution by such holder. The cases relied upon by plaintiffs are based on the proposition that the testator expressed his intent so ambiguously as to make construction necessary or that there is something about the will or surrounding circumstances that makes it necessary to apply to a court of equity in order to remove a difficulty out of the way of a proper and safe administration of the estate. We agree with defendants that there was in the Henry

Haugan will no such ambiguity, nor was there any administrative difficulty. The jurisdiction of the court was invoked by plaintiffs for the purpose of securing unto themselves the Henry Haugan estate. There was no ambiguity in the will. We find that plaintiffs have failed to bring themselves within the ambit of the cases cited by them.

The decree of the circuit court of Cook county is modified by striking out paragraph 8 of the findings of the decree and paragraph I of the decretal clause thereof to the extent that said paragraphs find or adjudge that construction of the will was necessary, and paragraph 5 of the decretal clause, allowing plaintiffs "reasonable attorneys' fees and expenses payable from the estate for services rendered in connection with the construction or interpretation of the will," and as modified the decree is affirmed.

*Decree (as modified) affirmed.*

Kiley and Lewe, JJ., concur.